## No. 24775.

THE PEOPLE OF THE STATE OF COLORADO *v.*
THOMAS JAMES BUENO.
(475 P.2d 702)

Decided October 26, 1970.

A. L. HERRMANN, JR., District Attorney, CHARLES T. HOPPIN, Deputy, for plaintiff-appellee.

EPSTEIN, EPSTEIN and LOZOW, GARY LOZOW, for defendant-appellant.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS is an interlocutory appeal of a trial court ruling denying defendant-appellant's motion to suppress as evidence one gold ring in connection with a pending burglary charge against him.

The police secured possession of the ring under the following circumstances: Investigation at the scene of a burglary revealed that a gold colored 1969 Oldsmobile was seen leaving the scene after two parties described as Spanish-Americans had entered the vehicle. The license number on the vehicle was also obtained from a witness. These two parties had been seen going into the back door and then leaving the burglarized premises. The license number was listed to a Frank Bueno at a West Denver address. The address was checked but Frank Bueno was not located.

The following day the police officers while driving around the general area of Frank Bueno's address came upon him. He was kneeling in front of his car changing the license plate. They arrested him and placed him in the police vehicle. While the officers and Frank Bueno were sitting in the police vehicle, one of the officers saw appellant, Thomas James Bueno, approach, hesitate, turn around and start walking away from the police vehicle. At this time the officers had no knowledge of this person's identity. One of the officers testified he was convinced that this person's actions indicated he saw the unmarked police car, the police officers, and Frank Bueno seated therein.

At this juncture the police officers drove up to appellant and asked him to come over to the police vehicle. One of the officers asked him for identification, which was furnished. The name of the appellant thereby became known to the police officers, who at the time also knew that a brother of Frank Bueno had recently been released from the penitentiary.

When the officer learned that defendant's name was also Bueno, the appellant was thereupon searched by the police officer because, as he testified: "I was not sure if this was the gentleman that been [sic] in the penitentiary or not. And the name Bueno, I felt he was related to Frank Bueno and I felt that, if I did not frisk him that I was endangering my own life."

During the frisk the police officer felt a bulge in the righthand pocket of the defendant's jacket. The officer reached into the pocket and pulled out some keys and the gold ring which the appellant seeks to suppress as evidence. At this point the appellant was told that he was under arrest and he was taken into custody.

■ Appellant contends that the taking of the gold ring from his personal possession under these circumstances was a violation of the Fourth and Fourteenth Amendments to the United States Constitution and therefore the trial court's order denying the suppression of this evidence should be reversed. We agree.

The crux of this case is not the propriety of the officer's steps to investigate the appellant's so-called suspicious behavior, but rather whether there was justification for the invasion of the appellant's personal security by searching him and recovering the ring that the People now seek to introduce as evidence.

■ A search without a warrant would be considered valid if: (1) At the time the appellant identified himself, the officer had probable cause to arrest; or (2) The officer was justified in believing that he was dealing with a potentially armed and dangerous individual, and thus

to insure his own safety conducted a limited search for weapons.

Turning first to the question of whether the officer had probable cause to arrest the appellant, we note C.R.S. 1963, 39-2-20 provides that an arrest without a warrant may be made by an officer "when a criminal offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it." In the case of *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236, we held that "the terms probable cause and reasonable grounds are substantially equivalent in meaning" and that:

"* * * Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed. * * * In dealing with probable cause, one deals with probabilities. These are not technical; they are the factual and practical consideration of everyday life on which reasonable and prudent men, not legal technicians, act." If such probable cause did in fact exist, the officer was entitled to make a reasonable search incident to arrest. *Hernandez v. People,* 153 Colo. 316, 385 P.2d 996.

In determining whether the officer had probable cause to arrest, we must briefly reexamine the facts. The officers already had one suspect in their car and were questioning him when the appellant approached, and at a distance of approximately one block from the unmarked police car hesitated, then turned and walked the other way, disappearing around a corner. A similar factual situation was found in *Gallegos v. People,* 157 Colo. 173, 401 P.2d 613. In *Gallegos* the officers testified that they saw the defendant standing with another person in an alley at night. When one of the officers called to the men, they started to run away, stopping only on the command "Halt or I'll shoot." We held that, in the absence of any additional information that Gallegos had marijuana in

his possession, the evidence was not sufficient to support a finding of probable cause to arrest.

If — in *Gallegos* — running away at night, following a direct request to "come over" did not, without more, constitute probable cause to arrest, then certainly — in the case at bar — when defendant turned and walked away when he had not been requested to "come over," probable cause to arrest was not shown. There is nothing in the testimony of the officer to indicate that he considered defendant a suspect in the burglary or a suspect in any other known criminal act.

■ We turn next to the question of whether the officer was justified in believing that he was dealing with a potentially armed and dangerous individual, and thus was permitted to conduct a limited search for weapons for his own safety (a so-called "stop and frisk"). The United States Supreme Court has held that a limited search for weapons without probable cause to arrest is allowable under certain circumstances:

"[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety, or that of others, was in danger." *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

In this case, however, we need not determine whether the officer's belief that the appellant was armed and dangerous was reasonable. The search conducted herein was not the "reasonable search for weapons" contemplated by *Terry.* The ring and keys that were seized were not shown by any evidence produced at the hearing to have been taken from the defendant under the belief that they might be a weapon or weapons, and therefore

they should not have been removed from the appellant's coat.

In *Tinney v. Wilson*, 408 F.2d 912, a case in which the officer squeezed the pockets of the defendant and felt something which upon extraction from the pocket proved to be pills or capsules, the court held that "[s]ince [the officer's] discovery of the pills or capsules in Tinney's pocket did not follow lawful arrest and resulted from an unconstitutional extension of his 'frisk' for possible weapons, it follows that *any 'fruit' of this search should have been excluded from Tinney's trial.*" (Emphasis added.)

█ The right to "stop and frisk" is not an open invitation to conduct what amounts to an unlimited search incident to arrest, but is, as indicated above, a limited search of the outer clothing for weapons. *Terry, supra; Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917.

█ Inasmuch as there was no search incidental to arrest — there being no probable cause to make such arrest; and inasmuch as the evidence did not show that the ring could reasonably be seized during a "frisk" and "pat down," we hold that the seizure of the ring was not lawful. It, therefore, must be suppressed as evidence.

The ruling of the district court denying the appellant's motion to suppress is reversed and the cause remanded with instructions to grant the motion.

MR. CHIEF JUSTICE McWILLIAMS, MR. JUSTICE HODGES and MR. JUSTICE KELLEY dissenting.