No. 25006.

The People of the State of Colorado *v.* William Siegel Navran and Walter Henry Niezguski.

(483 P.2d 228)

Decided April 5, 1971.

ROBERT R. GALLAGHER, JR., District Attorney, JAMES F. MACRUM, JR., Deputy, for plaintiff-appellant.

LEONARD E. DAVIES, for defendants-appellees.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

THIS is an interlocutory appeal which was perfected by the District Attorney under the provisions of C.A.R. 4.1 after the District Court of Arapahoe County granted the defendants' motion to suppress evidence. The evidence in issue was taken from the defendants following an arrest without a warrant.

The arrest occurred at approximately 1:10 a.m. on April 8, 1970, after the defendants entered a long residential driveway, proceeded toward the residence, and then attempted to drive back out. The residence had been under police surveillance for more than a week; and on this particular evening, the police had been advised that a large quantity of marijuana would be delivered to the premises. The police investigation had also provided facts which established probable cause to arrest the occupant of the residence, who was conspicuous by his continued absence. With the suspicion that either the occupant or some other subject of the investigation might be in the defendants' vehicle, the police officers quickly surrounded the vehicle. When the officers appeared, the defendant Navran stopped the car, and both defendants got out of the car and offered no resistance. The officers said that they realized that neither of the defendants was the occupant of the residence or any other person known to be a subject of the investigation. Nevertheless, they caused each of the defendants to be spread-eagled against the car and searched. A police officer patted down the defendants' outer clothing and frisked the defendants' inner clothing. In conducting this so-called pat-down and frisk of the defendant Navran, the police officer felt a lump in the defendant's shirt pocket. A further

search of the contents of the shirt pocket disclosed that the lump was a plastic baggie containing marijuana seeds and a package of roll-your-own cigarette papers. By means of the same procedure, the officer also took a telephone-address book from the defendant Navran and a quantity of cigarette papers from the defendant Niezguski.

The District Attorney claims that the evidence seized was legally obtained. He contends that the search was incident to an arrest based upon facts which established probable cause to make an arrest. In the alternative, he argues that the facts in this case fall squarely within the stop-and-frisk doctrine which was articulated by the Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We find that the facts do not support either argument.

It is fundamental that the lawfulness of an arrest without a warrant by state officers for a state offense must be determined by state law. *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Under C.R.S. 1963, 39-2-20, an arrest may be made "by an officer, when a criminal offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it." The term "probable cause" is essentially equivalent to the statutory phrase "reasonable ground" and has been deemed to have substantially the same meaning. *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236 (1965). *Cf., Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967).

A court must determine whether the facts available to a reasonably cautious officer at the moment of arrest would warrant his belief that an offense has been or is being committed. *Lucero v. People,* 165 Colo. 315, 438 P.2d 693 (1968), *cert. den.,* 393 U.S. 893, 89 S.Ct. 217, 21 L.Ed.2d 173, *citing Gonzales v. People, supra. See also, Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962). The only facts which supported the officers' suspicion that the defendants were engaged in

criminal activity arose out of the defendants' conduct in driving a car into the driveway of a residence where an expected shipment of marijuana was somehow to be delivered. Unlike the situation in *People v. Collman,* 172 Colo. 238, 471 P.2d 421 (1970), and *People v. Lujan,* 173 Colo. 77, 475 P.2d 700 (1970), there was no evidence that a criminal offense had actually been committed on the premises. Nor does the record disclose facts which would give the police officers reasonable grounds to believe that the defendants had committed a criminal offense of any kind. The defendants were not guilty of any traffic infractions, and they were not known violators of any other laws. *See Roybal v. People,* 166 Colo. 541, 444 P.2d 875 (1968). *Cf., Wise v. Murphy,* No. 4480 (D.C. Ct.App. March 16, 1971). No claim is made that the defendants had been mentioned by any of the so-called confidential, reliable informants. Further, the surveillance and investigation had been under way for approximately two weeks, and the officers were not even aware of the defendants' existence. These circumstances, coupled with the admission that the police had no basis in fact to search the defendants, make it clear that the search was exploratory only and cannot be sustained. *See People v. Singleton,* 174 Colo. 138, 482 P.2d 978.

Although no probable cause existed to justify an arrest of the defendants, the District Attorney has urged that the conduct of the police officers was reasonable in light of the United States Supreme Court decision in *Terry v. Ohio, supra.* We cannot agree. Admittedly, the police officers would have been derelict in their duty had they not stopped the defendants' vehicle to determine whether the occupant of the residence, or any other known subject of the investigation, was in the car. Likewise, the officers could have detained the defendants long enough to ascertain why they were on the premises. But to contend that the officers' conduct in this case was reasonable, in light of *Terry v. Ohio, supra,* is not supported by the facts.

*Terry* is one of a trilogy of cases decided by the United States Supreme Court. The case arose as a result of on-the-street surveillance by an experienced police officer who had many years' experience with the robbery detail and who, for a period of minutes, observed Terry and others casing a store, observing it, conferring in combinations of two's and three's, and then peering into it again. The officer stopped the men without formally arresting them and asked for their names. When no audible response was received, he lined Terry up with the others and frisked all three. He found loaded weapons on Terry and on one of the other two. The Court recognized that the Fourth Amendment rights of Terry were, in fact, being violated, but upheld the limited search for weapons on the basis that the officer's action was justified at its inception, and the search was reasonably related in scope to the circumstances which justified the interference in the first place. In granting this limited right, the Court stated:

" . . . We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous; where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries; and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken."

In the companion cases of *Sibron v. New York* and *Peters v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d

917 (1968), the Court reiterated its holding in *Terry* that the basic question in a particular case is "whether the search was reasonable under the Fourth Amendment." In *Sibron,* the defendant had been observed over an eight-hour period and had been seen conversing with known narcotics addicts. The officer testified that he did not see anything pass between Sibron and his associates. Nonetheless, after Sibron had been observed speaking with several known addicts inside a restaurant, he was approached by the officer and told to come outside. Once outside, the officer searched him and discovered several glassine envelopes which contained heroin. In holding that the heroin was seized in violation of the Fourth Amendment to the United States Constitution, the Court stated:

"The inference that persons who talk to narcotics addicts are engaged in criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security. Nothing resembling probable cause existed until after the search had turned up the envelopes of heroin. It is axiomatic that an incident search may not precede an arrest and serve as part of its justification. Thus, the search cannot be justified as incident to a lawful arrest."

The Court concluded with a discussion of whether the search of Sibron might have been justified on the basis of the officer having reasonable grounds to believe that Sibron was armed and dangerous. The Court noted that "[i]n the case of the self-protective search for weapons, [the officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."

In *Peters,* the search was upheld because it followed a lawful arrest, which was based upon probable cause to believe that the defendant was guilty of attempted burglary.

From this trilogy of cases, we conclude that the authority to make a search without probable cause is

limited in the following manner: There must be (a) some reason for the officer to confront the citizen in the first place, (b) something in the circumstances, including the citizen's reaction to the confrontation, must give the officer reason to suspect that the citizen may be armed and, thus, dangerous to the officer or others, and (c) the search must be limited to a frisk directed at discovery and appropriation of weapons and not at evidence in general.

█ It is apparent that the search conducted herein was not the "reasonable search for weapons" contemplated by the *Terry* case. *People v. Bueno,* 173 Colo. 69, 475 P.2d 702 (1970). The right to "stop and frisk" is not an open invitation to conduct an unlimited search incident to arrest or a means to effect a search to provide grounds for an arrest. Rather, it is a right to conduct a limited search for weapons. *Terry v. Ohio, supra; accord, Sibron v. New York, supra.* The seeds and cigarette papers seized were not shown by any evidence produced at the hearing to have been taken from the defendants under circumstances which would permit a search for weapons.

We agree with the trial court's finding that the evidence sought to be suppressed was seized incident to an arrest which was made without probable cause, and that the seizure resulted from an exploratory search.

Accordingly, we affirm the trial court's ruling which sustained the defendants' motion to suppress.