## No. 25365

### The People of the State of Colorado v. Berry A. Noreen
(509 P.2d 313)

Decided April 30, 1973. Rehearing denied May 14, 1973.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, David A. Sorenson, Assistant, Jerty W. Raisch, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Alvin D. Lichtenstein, Deputy, for defendant-appellant.

MR. JUSTICE GROVES delivered the opinion of the Court.

The defendant was convicted of possession of a dangerous drug. His motion to suppress admission in evidence of the drug and syringes was denied by the trial court and the evidence was admitted during trial over the defendant's continuing objection. The sole issue raised by this appeal is whether this evidence should have been suppressed.

The record reflects that law enforcement officers, armed with a warrant, conducted a night-time search for narcotics at

a residence occupied by two young women. Sometime between 11:00 p.m. and midnight the defendant and another young male arrived at this house. Testimony at the suppression hearing and at the trial was in conflict as to some of the events following the boys' arrival at the house. There was testimony to the effect that the two were met by an officer as they proceeded along the sidewalk to the house; that they were told by the officer to go into the house; and that after they entered an officer searched the defendant by reaching into the defendant's back pocket and pulling out two small plastic syringes and a small packet of methamphetamine. Other testimony indicated that the two were first observed inside the house by officers conducting the search; that they appeared to be nervous, upset and anxious to leave the house; that the defendant made an unusual hand movement to his left rear pocket; that an officer told the defendant to remove his hand from his pocket; that when the defendant removed his hand from the pocket he was holding the plastic syringes; and that a search of the defendant resulted in the seizure of the methamphetamine from his pocket.

The officers had no warrant to search the defendant. They did not know of any connection between the residence or its occupants and the defendant other than the fact that the defendant arrived at the house on the night of the search. The defendant was not known to the officers. Upon questioning by the officers prior to the "search" of the defendant and the friend who accompanied him, the two identified themselves and stated that they had come to the house to visit the two girls.

 Although the officers had no warrant to search the defendant, the seizure of the syringes and methamphetamine might be upheld if prior to the search the officers had probable cause to arrest the defendant. *People v. Navran,* 174 Colo. 222, 483 P.2d 228 (1971); *People v. Bueno,* 173 Colo. 69, 475 P.2d 702 (1970); and *Lavato v. People,* 159 Colo. 223, 411 P.2d 328 (1966). The People concede that the officers did not have probable cause to arrest the defendant prior to the search. We agree. *Mora v. People,* 178 Colo. 279,

496 P.2d 1045 (1972); *People v. Henderson,* 175 Colo. 400, 487 P.2d 1108 (1972); *People v. Navran, supra;* and *People v. Bueno, supra.*

In a somewhat similar case, we stated that it is reasonable for an officer conducting a legal search of premises for narcotics to "frisk" or "pat down" the occupants of the house as well as those coming into the house for weapons in order to protect himself and his fellow officers from the use of such weapons. *People v. Nefzger,* 173 Colo. 199, 476 P.2d 995 (1970). In connection with such a search, the officer here could have asked the defendant to remove his hand from his pocket. *People v. Nefzger, supra.* If, when the defendant took his hand from his pocket he held the syringes in his hand, the seizure would be justified under the "plain view" doctrine and the subsequent search of the defendant would be valid as incident to his arrest. *People v. Nefzger, supra.*

It is argued that the searching officer did not have reason to believe that the defendant had a weapon on his person and, therefore, had no right to frisk the defendant. The argument continues, absent the right to frisk, there was no right to tell him to take his hand out of his pocket.

On direct examination by the prosecution the officer testified that he put his hand in the defendant's pocket initially. However, upon cross-examination by the defendant's counsel, the officer testified that he asked the defendant to turn around and remove his hands from his pockets and that, when the defendant did so, the defendant held two syringes in his hand. The officer further testified that his decision to search the defendant was prompted by the unusual hand movement of the defendant to his left rear pocket. The officer stated that he did not know what was in the pocket and that it could have been a gun or a knife. The officer also testified that he was not necessarily afraid that there was a gun or a knife in the pocket but that due to the unusual movements by the defendant he didn't know what was there. When asked whether there was a suspicion on his part that the defendant might be armed, the officer stated

that he did not believe he had such a suspicion. The officer also stated that he could not say he was trying to protect himself and his fellow officers.

Under this testimony, there would be justification for findings and a conclusion by the trial court that the officer was apprised of the possibility of the defendant carrying a weapon; that, irrespective of the particular thoughts of the officer, objectively there existed sufficient cause for a pat down; and that, therefore, the officer might request the defendant to remove his hand from his pocket as a preliminary to a frisk.

"The subjective fears and concerns of the individual officer are not the test of reasonableness. One officer may be unduly rash and may have a high threshhold of fear; another may be overly cautious and too easily alarmed; but both types are entitled to the protection of a *Terry* [*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] search so long as their actions meet the reasonably-prudent-man test established in *Terry*." *Brown v. State*, Del. Supr., 295 A.2d 575 (1972).

▪ If, on the other hand, the officer reached into the defendant's back pocket to find out what was there, and discovered the syringes and drug, the search and seizure would be invalid as beyond the scope of a permissible frisk. Such a search is limited in scope to a pat down or frisk of the clothing for assaultive weapons and not for evidence in general. *People v. Navran, supra; People v. Bueno, supra,* and *Terry v. Ohio, supra.*

▪ The trial court made no specific finding of fact as to how the syringes were discovered by the officer and instead appeared to rule that the search was incident to the defendant's arrest. For this reason, we remand the case to the district court for a finding as to whether the seizure can be upheld under the "plain view" doctrine, and to hear any appropriate additional evidence that may be offered. If there was such justification, the judgment is affirmed, subject to the defendant's right to appeal the trial court's further ruling. Otherwise, the judgment is reversed and the trial court is

directed to order a new trial.

MR. JUSTICE ERICKSON dissents.

MR. JUSTICE KELLEY does not participate.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. The majority opinion breaks with precedent and upholds a search on the basis of suspicion, supported only by speculation, that every person that enters an area which has been made the subject of a search warrant has committed a crime and is subject to search. *See People v. Feltch,* 174 Colo. 383, 483 P.2d 1335 (1971).

The majority opinion omits a critical part of the officer's testimony. The officer testified that the defendant tried to leave. This action provided part of the basis for the officer's suspicion. The officer, however, did not allow the defendant to leave, but, instead, told him he would be searched. Then the officer told the defendant to turn around and take his hand out of his pocket. The officer did not suspect or have reason to believe the the defendant possessed a weapon. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), permits a limited search for weapons when the frisk is based upon a justified belief that the individual is armed and presently dangerous. *See Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). *See also, Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). *People v. Nefzger,* 173 Colo. 199, 476 P.2d 995 (1970), has been expanded far beyond the facts which supported the decision. In *Nefzger,* the detective testified that he searched the defendant for a gun which the detective suspected the defendant might be reaching for at the time. The facts in this case do not fit the pattern of *Nefzger.* Even a weapon search is more than a petty indignity. In *Terry v. Ohio, supra,* the Court said:

"Even a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience."

I see no sound distinction between this case and *Sibron v.*

*New York, supra,* which held a search and a subsequent seizure constitutionally impermissible. In *Sibron,* the officer had seen the defendant talking with narcotics addicts. The officer approached Sibron and said: "You know what I am after." When Sibron then put his hand in his pocket, the officer reached in the pocket also and seized heroin. The Supreme Court held the search unlawful, both because its object was narcotics, rather than a weapon, and because the search was not limited in its scope to a frisk or pat down.

The facts in this case are strikingly similar to those of *United States v. Meulener,* 351 F.Supp. 1284 (D.C.D. Calif. 1972). In *Meulener,* the defendant was stopped by a marshal as the defendant was about to board a plane. The marshal ordered him to open his suitcase, and the defendant complied. Narcotics were discovered in the suitcase. The district court held the seizure invalid because the defendant opened his suitcase only after being ordered to do so in a coercive atmosphere and because the defendant was not allowed to leave rather than submit to search. In the instant case, the defendant was trying to leave, but the officer prevented him, told him he would be searched, and ordered him to remove his hand from his pocket. The grave danger of hijacking did not justify the search in *Meulener, supra.* In our case, the search is equally abhorrent to constitutional principles.

The second part of the majority opinion is also unacceptable. The trial court found that the syringe and drugs were discovered as the result of a *search* which the trial court believed to be proper as incident to an arrest. The officer testified that he did not conduct a pat-down frisk. He told the defendant to turn around and take his hands out of his pockets, and then the officer reached in the defendant's pocket and removed a small package of drugs. The officer testified that he did not think the defendant had a weapon, but that he thought there might be narcotics in the defendant's pocket. The officer testified that the search was conducted before he placed the defendant under arrest. The opinion's recipe for justifying the seizure, coupled with the

334

remand they direct, grants the prosecution two bites at the apple. The remand is an invitation to perjury and prosecution-tailored factfinding. After the straight-forward testimony of the searching officer, which established that a search, rather than a frisk, took place, and after the trial court's finding that the contraband was discovered as the result of a search, no remand should be ordered.

The majority opinion concedes that a full-blown search was not justified. Therefore, the judgment of the lower court should be reversed and the search and seizure declared invalid.