546 P.2d 964 (1976)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Gilbert E. SHACKELFORD, Defendant-Appellant.
No. 75-070.
Colorado Court of Appeals, Div. III.
February 5, 1976.
*965 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Asst. Atty. Gen., Mary J. Mullarkey, First Asst. Atty. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, Colo. State Public Defender, Robert E. Allen, Deputy State Public Defender, Denver, for defendant-appellant.
Selected for Official Publication.
PIERCE, Judge.
Defendant, Gilbert Shackelford, appeals from conviction of aggravated robbery, kidnapping, and rape. We affirm.
As the victim of the offenses was driving her car at about 2:00 a. m., a man concealed in the rear of the car, armed with a knife, attacked her. The man ordered her to continue driving while he went through the contents of her purse. He then directed the victim to stop and raped her, covering her face with a bedspread he found in the backseat. The victim was able to see little of her attacker except for his shirt; she could feel, however, that the attacker had a beard, and she had ample opportunity to hear him speak. After the attack, the assailant got back into the backseat, directly behind the driver, and instructed her to continue driving the car. Later, at about 4:00 a. m., he directed her to stop, and jumped out of the car; the victim was unable to get a good view of the assailant as he fled. The defendant was arrested later that night.

I.
The defendant first contends that the trial court erred in failing to grant a motion to suppress evidence taken from him prior to his actual arrest.
*966 After the flight of her assailant, the victim flagged down a patrol car in the vicinity. The interviewing officer broadcast a description of the attacker. Within 10 minutes, officers in another vehicle nearby noticed a pedestrian who appeared to match the description. The officers stopped the suspect, who was the defendant, and asked him for identification. He gave them his temporary driver's license, which he removed from a stack of papers which had a rubber band around them.
While running a radio check on the suspect, the officers, who were concerned that the defendant might be armed, conducted a pat-down search for weapons. The officers noticed that when the defendant was asked to put his hands out to his sides, he turned his left hand away so that the officers could not tell what, if anything, the defendant was holding in that hand. This surreptitious reaction to the frisk caused the officers to worry that the defendant might be palming a weapon or contraband. Accordingly, after the defendant's refusal to show the officers what was in his hand, the officers scuffled with him until the palmed material fell to the ground. That material proved to be credit cards and papers, which they seized. The credit cards were in the names of three different persons, none of whom was the defendant.
The officers then arrested the defendant for investigation of stolen credit devices. At approximately the same time, however, the victim and the officer to whom she had made the initial complaint arrived on the scene. The victim made a tentative identification of the defendant as matching her description of the assailant, based on height, beard, and the shirt he was wearing. Meanwhile, the officers went through the retrieved credit cards, finding one issued to the victim. She identified the card as hers. The defendant was then thoroughly searched, and other items connecting him with the alleged offenses were found. These articles, and the credit card, were introduced into evidence at defendant's trial.
The defendant further contends that the trial court should have suppressed these articles in that those materials were the product of an unreasonable and unlawful search and seizure contrary to Colo.Const. Art. II, Sec. 7 and the Fourth Amendment to the United States Constitution. We disagree.
Under the circumstances of this case, where the search of the defendant is a protective pat-down for weapons, rather than a full-scale search based on the existence of probable cause to arrest, it must be shown that: 1) The officers had some reason to confront the citizen in the first place; 2) something in the circumstances, including the citizen's reaction to the confrontation, gave the officers reason to believe that the suspect was armed, and thus, was dangerous to the officers or to others; and 3) the search was limited to a frisk directed at the discovery and appropriation of weapons, rather than at evidence in general. People v. Navran, 174 Colo. 222, 483 P.2d 228. See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In order to uphold the stop and frisk as reasonable, both the initial confrontation and the subsequent search must have been prompted by the officers' reliance on particular facts, rather than on inarticulable hunches, and the scope of the frisk must be limited to that necessary for the discovery of weapons. People v. Taylor, Colo., 544 P.2d 392 (announced December 29, 1975). See also § 16-3-103, C.R.S.1973. Judging the action of the officers in this case upon these criteria, we hold that the trial court correctly denied the defendant's motion to suppress.
The defendant concedes that the officers acted properly in stopping and temporarily detaining him for the purpose of questioning. Indeed, the officers in this case would have been derelict in their duties if they had failed to stop and question the defendant. Defendant was in the immediate vicinity of the area from which the assailant had fled the victim's vehicle and matched the description given by the victim to the police. There can be little *967 question that these circumstances represent sufficiently particular facts to uphold the reasonableness of the temporary detention for questioning. See Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; People v. Mathis, Colo., 542 P.2d 1296 (announced December 1, 1975); Stone v. People, 174 Colo. 504, 485 P.2d 495.
The defendant bases his argument in favor of suppression on the purported illegality of the consequent pat-down search and struggle. In this regard, he argues that the officers had no reason to suspect that he was armed, and that therefore, the subsequent frisk was unlawful. We do not agree.
The arresting officer stopped the defendant because he matched the description of a suspect who had allegedly commited an act of violence. These circumstances constituted reasonable grounds to fear that the suspect might well be armed, and thus, be potentially dangerous. The officers therefore acted properly in initiating a pat-down search for weapons. See Terry v. Ohio, supra.
Similarly, the officers' request that the defendant show what he was holding in his left hand, and the subsequent scuffle upon his refusal, were justified under the circumstances. The testifying officer stated that their interest in what the defendant held in his hand was prompted by his actions in turning the hand away from the officers; the officer testified that he was concerned that the defendant might be palming a weapon. Under these circumstances, it was reasonable to ask the defendant about the contents of his hand, and upon the failure of the defendant to answer, to attempt to ascertain whether he held a weapon. We find nothing unreasonable in this search since it was prompted by the defendant's suspicious and unusual movements in response to the confrontation. See People v. Noreen, 181 Colo. 327, 509 P.2d 313; People v. Navran, supra.
Since the search was directed at the discovery of possible weapons, the materials uncovered by that search were the product of a permissible protective frisk of the defendant's person, and were properly admitted at defendant's trial. See People v. Martineau, 185 Colo. 194, 523 P.2d 126.

II.
The defendant's second argument on appeal is that the trial court erred in requiring him to stand up at trial and repeat three sentences allegedly uttered by the perpetrator of the offenses. Following the defendant's performance, the victim positively identified the voice as being that of her assailant. The defendant contends that this procedure violated his privilege against self-incrimination. We disagree.
Both the federal and state constitutional privileges against self-incrimination are limited to protection from testimonial compulsion, as opposed to the compelled exhibition of a physical characteristic. People v. Brown, 174 Colo. 513, 485 P.2d 500; Sandoval v. People, 172 Colo. 383, 473 P.2d 722. That privilege does not extend to demonstrative evidence obtained from the defendant or to the performance of certain non-communicative acts in or out of court. Thus, the trial court did not violate defendant's constitutional rights in directing the suspect to stand and repeat within the hearing of the complaining witness words allegedly uttered during the commission of the offense, since that direction only compelled the defendant to engage in non-testimonial conduct. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; People v. District Court, Colo., 531 P.2d 626. The defendant was merely required to offer his voice as an identifying physical characteristic; he was not required to do any act which would tend to connect him with the crime or which would otherwise directly communicate his guilt to the jury. United States v. Wade, supra. See also United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed. *968 2d 67. This conclusion is not affected by the fact that the defendant was required to utter the same words as those purportedly spoken by the victim's assailant. See United States v. Wade, supra; Biggers v. State, 219 Tenn. 553, 411 S.W.2d 696; aff'd, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267; People v. Holt, 28 Cal.App.3d 343, 104 Cal. Rptr. 572, cert. denied, 413 U.S. 921, 93 S. Ct. 3072, 37 L.Ed.2d 1044.
The defendant urges that Serratore v. People, 178 Colo. 341, 497 P.2d 1018, compels us to find that the court-ordered presentation violated his privilege against self-incrimination. Serratore is inapposite. In that case, the prosecutor attempted to compel the defendant's active participation in a communicative activity, in effect a contrived experiment, which would supposedly demonstrate the inability of the defendant to perform a certain physical act, from which the jury would necessarily infer that the defendant was guilty. The entire purpose of the requested action in that case was to require defendant to communicate directly to the jury the very fact of the defendant's guilt. See People v. District Court, supra; Vigil v. People, 134 Colo. 126, 300 P.2d 545.
Here, however, the defendant was merely told to repeat certain words supposedly uttered by the perpetrator of the offense. In so doing, he did not give any factual information whatsoever which would tend to connect him with the crime, but was only required to exhibit a physical characteristic, the sound of his voice, for the purpose of attempted identification by the prosecuting witness. See Vigil v. People, supra; Biggers v. State, supra. Hence, no testimonial communications were exacted from the defendant; only the witness who identified that voice as belonging to the assailant was engaging in communicative activity. See Serratore v. People, supra.
Judgment affirmed.
SMITH, J., concurs.
BERMAN, J., dissents.
BERMAN, Judge (dissenting).
Respectfully I dissent. The majority opinion equates the "performance" of the defendant as only "offer[ing] his voice as an identifying physical characteristic" and that this did not require him "to do any act which would tend to connect him with the crime or which would otherwise directly communicate his guilt to the jury." I agree that what the prosecutor required the defendant to do in repeating the exact words as those purportedly uttered by the victim's assailant was to compel him to engage in a "performance." But I disagree that the "performance" defendant was required to engage in did not "tend to connect him with the crime" or compel him to otherwise "directly communicate his guilt to the jury."
Undoubtedly voices do have particular identifiable physical characteristics and in a society such as ours, which is so attuned to hearing advertisements spoken by unidentified faces, many can utilize the sound of a voice to identify the speaker. But this particular identifying physical characteristic can be determined without the use of the exact words uttered in exactly the same context as allegedly uttered.[1]
The majority concedes that the victim "had ample opportunity to hear [the attacker] speak." That being the case, there was no necessity for the identification of certain operative words in sequence, but rather a necessity only for the opportunity to identify the general speech pattern of the assailant. There is no evidence, that I am aware of, that the victim required the use of certain words in order to identify her assailant. But even if the prosecution could have demonstrated the necessity for the use of the specific words, they could have used those words by interspersing *969 them in several different sentences and not having them repeated seriatim. True, this may have taken some little time to prepare, but I do not believe that it is too great a price to pay to insure that the jury does not become overwhelmed by the implications of the words themselves; especially is this so when the victim has just testified to their use by her assailant and while she is still on the witness stand, hearing the accused upon compulsion repeating them.
Under the cases cited by the majority, this procedure has seemingly been approved by the United States Supreme Court. Nevertheless, a state may impose higher standards than that required under the Federal Constitution. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730; and see People v. Instantwhip Denver, Inc., 176 Colo. 396, 490 P.2d 940, and People v. District Court, 165 Colo. 253, 439 P.2d 741. Under the circumstances of this case, I believe that we should adopt a higher standard than the United States Supreme Court requires.
I would hold that the reversal of this case is mandated by Serratore v. People, 178 Colo. 341, 497 P.2d 1018.
NOTES
[1] The sentences the defendant was required to repeat are:

"Didn't you get paid tonight?"
"If you go to the pigs, I'll send one of my friends after you."
"I can't have you go to my house."