**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Morris E. WOLF, Defendant-Appellee.**

**No. 81SA56.**

Supreme Court of Colorado, En Banc.

Oct. 19, 1981.

Paul Q. Beacom, Dist. Atty., Marc P. Mishkin, Deputy Dist. Atty., Steven Bernard, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

Marvin Dansky, Westminster, for defendant-appellee.

ERICKSON, Justice.

Pursuant to C.A.R. 4.1, the district attorney has prosecuted an interlocutory appeal from an order suppressing evidence seized incident to the defendant's arrest. At issue is the legality of an arrest made outside the jurisdictional boundaries of the Denver police. We reverse the district court and remand for further proceedings consistent with this opinion.

Based on a tip from an informant that the defendant, Morris Wolf, was purchasing stolen merchandise, the Denver Police Department Anti-Fencing Unit initiated an

investigation. The defendant's place of business, Adam Loan, located at 6489 Federal Boulevard in Adams County, Colorado, was the focus of the investigation. At approximately 9:00 a. m. on July 27, 1979, the Denver police sent an informant, Ivory Greathouse, into Adam Loan to transact "business" with the defendant. The informant was wired with a radio transmitter. He advised the defendant that he had a stolen microwave oven and television set that he wanted to sell. The defendant purchased the items for a price far below market value. The informant and the defendant also discussed the purchase of a guitar and a number of other assertedly stolen items. The Denver police observed the transaction from a van which was parked across the street and recorded the conversation that was transmitted over the radio. The informant returned to the van and turned the money from the sale of the microwave oven and the television set over to the police.

At noon on the same day, the informant returned to Adam Loan to sell the defendant a guitar. By that time the defendant had left the premises, and the transaction had to be postponed. In the meantime, Denver police officers who were keeping the premises under surveillance, saw a person later identified as the defendant's stepson, load the microwave oven into a vehicle and drive away. The police stopped the vehicle in Denver and recovered the oven.

At approximately 2:00 p. m. on the same day, the informant returned to Adam Loan with the guitar and some other items which he sold to the defendant at a price far below market value. Once again, the informant was wired for sound and the transaction was recorded and observed by the Denver police.

As soon as the informant left the premises, the Denver police entered Adam Loan and arrested the defendant. Shortly thereafter, the Adams County law enforcement authorities arrived and took the defendant to the Adams County jail.

Immediately after his arrest, the defendant was advised of his rights under *Miranda*

*v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Initially, he declined to make a statement and proclaimed his innocence. However, when the police told him that the informant was wired for sound and that the police had recorded the defendant's conversations and had seen the transactions take place, the defendant waived his *Miranda* rights and made a statement. He also consented to a search of the premises.

The defendant was charged with two counts of theft by receiving. Section 18–4–410, C.R.S.1973 (1978 Repl.Vol. 8). His first trial ended with a conviction on both counts. A motion for a new trial was granted based on incompetence of his original trial counsel. Thereafter, the defendant secured new counsel and a motion to suppress was filed, together with a series of other motions directed to the conduct of the Denver police and the admissibility of evidence seized as a result of the defendant's arrest.

The district court entered findings of fact, conclusions of law, and an order of suppression, which declared that the arrest of the defendant was invalid because the Denver police were acting outside of their jurisdiction. The confession and evidence seized by the police during the subsequent search were suppressed as fruits of the unlawful arrest. The district court also ruled that the use of an informant wired for sound violated the defendant's expectation of privacy under the Fourth Amendment, and, accordingly suppressed the tape recordings of the transactions which provided a basis for the receiving charges. Under the facts of this case, we find no violation of either the Fourth Amendment to the United States Constitution or Article II, section 7 of the Colorado Constitution.

In reversing the trial court, we again address difficult issues relating to the authority of a peace officer to make an arrest outside of the territorial limits of his authority. Section 16–3–102, C.R.S.1973 (1978 Repl.Vol. 8) provides:

"(1) A peace officer may arrest a person when:

(a) He has a warrant commanding that such person be arrested; or

(b) Any crime has been or is being committed by such person in his presence; or

(c) He has probable cause to believe that an offense was committed and has probable cause to believe that the offense was committed by the person to be arrested."

The prosecution asserts that the arrest was valid on the basis of subsection (1)(b) of section 16–3–102, C.R.S.1973, because the crime was committed in the presence of the Denver police. Section 16–3–106, C.R.S. 1973 (1978 Repl.Vol. 8), however, states that a peace officer may make an arrest outside the territorial limits of his authority for a crime committed in his presence only when he is in fresh pursuit of an offender:

"When any peace officer is in fresh pursuit of any alleged offender, having a warrant for his arrest or having knowledge that such warrant has been issued, or, in the absence of an arrest warrant, when the offense was committed in the officer's presence or the officer has reasonable grounds to believe that the alleged offender has committed a criminal offense, and the alleged offender crosses a boundary line marking the territorial limit of his authority, such peace officer may pursue him beyond such boundary line and make the arrest, issue a summons and complaint, or issue a notice of penalty assessment."

See *Charnes v. Arnold*, 198 Colo. 362, 600 P.2d 64 (1979) for criteria in determining what police activity constitutes fresh pursuit.

■ The General Assembly, in enacting section 16–3–106, C.R.S.1973, intended to limit peace officers from exercising their arrest powers and their law enforcement efforts, to the territorial limits of their authority and to require that local peace officers be advised and participate in the extra-territorial law enforcement activities of other peace officers.

■ We conclude that the Denver police did not have statutory authority, as peace officers, to arrest the defendant in Adams County because they were not in fresh pur-

suit and they did not have a warrant for the defendant's arrest. *Compare, People v. Schultz*, Colo., 611 P.2d 977 (1980); *People v. Lott*, 197 Colo. 78, 589 P.2d 945 (1979).

■ Nonetheless, a peace officer acting outside the territorial limits of his authority does not have less authority to arrest than a person who is a private citizen. Section 16–3–201, C.R.S.1973 (1978 Repl.Vol. 8), provides:

"A person who is not a peace officer may arrest another person when any crime has been or is being committed by the arrested person in the presence of the person making the arrest."

In *People v. Bloom*, 195 Colo. 246, 577 P.2d 288 (1978), this Court relied on section 16–3–201 to uphold an arrest by an MEG agent acting beyond the territorial limits of his authority when a crime had been committed in his presence. In *Bloom*, we stated: "If private citizens have the power to arrest persons who commit crimes in their presence, certainly a police officer, outside his territorial jurisdiction, has the same power." *Id.* at 252, 577 P.2d 288. Other jurisdictions have reached a similar conclusion. For example, in *State v. Filipi*, 297 N.W.2d 275 (Minn.1980), the Minnesota Supreme Court stated:

"The record furnishes no evidence that defendant was ever physically within the City of Minneapolis, much less that he committed any crime within the city. Defendant was arrested for a crime committed entirely outside the city and, therefore, outside the bailiwick of the arresting officers. These Minneapolis policemen were not pursuing a suspect who was fleeing their jurisdiction or had escaped from their custody, nor were they acting in obedience to a jurisdictional authority. Therefore, they had no police authority to arrest defendant outside their jurisdiction. Minn.Stat. § 629.40 (1978). *See also, State v. Mastrian*, 285 Minn. 51, 54–55, 171 N.W.2d 695, 698–99 (1969), cert. denied, 397 U.S. 1049, 90 S.Ct. 1381, 25 L.Ed.2d 662 (1970).

"Nevertheless, we find the arrest lawful. A police officer outside his jurisdiction is not completely stripped of the power to arrest. It has been stated:

'Beyond his own bailiwick, ordinarily an officer has only the arrest powers of a private citizen, such as these may be, in the district where the arrest is made. Thus, if an arrest by a private citizen would be lawful under the existing circumstances, an arrest by an officer away from his own bailiwick would be lawful, otherwise not. This rule has been applied to arrests made by city police officers outside the confines of their municipalities, and also to peace officers of one state operating in another.'

"E. Fisher, *Laws of Arrest* § 142 (1967) (footnotes omitted). We subscribe to that rule. *See Smith v. Hubbard*, 253 Minn. 215, 224, 91 N.W.2d 756, 764 (1958)." *Id.* at 277–8.

*Accord, People v. Marino*, 80 Ill.App.3d 657, 36 Ill.Dec. 71, 400 N.E.2d 491 (1980); *Stevenson v. State*, 287 Md. 504, 413 A.2d 1340 (1980). *Compare, People v. Lott, supra* (crime not committed in the presence of the arresting officer).

■ In this case, the Denver police did not have statutory authorization, as peace officers, to effect the arrest outside the territorial limits of their authority. Sections 16–3–102 and 16–3–106, C.R.S.1973. Likewise, because the Denver police were not acting as private citizens, they did not have statutory authorization for the arrest under section 16–3–201, C.R.S.1973. Nonetheless, the Denver police do not have less power to arrest for a crime committed in their presence than a private person.

■ Despite the fact that the Denver police violated the statutes governing their authority to arrest, the issue, for purposes of application of the exclusionary rule, is whether the arrest was unconstitutional.

"[T]he [exclusionary] rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures."

*United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

■ Probable cause measures the constitutionality of an arrest by law enforcement officers. *U.S.Const.* amend. IV; *Colo. Const.* Art. II, Sec. 7. *People v. Fratus*, 187 Colo. 52, 528 P.2d 392 (1974). In determining whether probable cause exists, the test is whether the facts available to a reasonably cautious officer at the moment of arrest warrant his belief that an offense has been or is being committed. *People v. Navran*, 174 Colo. 222, 483 P.2d 228 (1971). In this case, the Denver police observed and recorded the defendant buying stolen merchandise on two separate occasions. We conclude that there was not only probable cause for the defendant's arrest, but that the crime of receiving was actually committed in the presence of the Denver police. *Compare, People v. Lott, supra*, where this Court upheld the suppression of evidence seized in violation of the police officers' power to effect an arrest outside the territorial limits of their authority. In *Lott*, we stated: "Assuming that probable cause existed for the arrest, Denver police might have had the authority to arrest without a warrant. Section 16–3–102, C.R.S.1973." *Id.* at n. 1.

■ Since the arrest in this case did not offend against constitutional restraints on unreasonable seizures, we decline to impose the exclusionary rule as a remedy for the statutory violation. *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Nonetheless, we do not approve of the actions of the Denver police which were in violation of the statutes governing their authority to arrest. Law enforcement officers should not make excursions into another jurisdiction to ferret out crime without first securing approval of the law enforcement authorities in that jurisdiction, or to make an arrest when they are not in fresh pursuit. In cases where the police act in willful disobedience of the law, the courts have not hesitated to use their supervisory power to exclude evidence. *See, e. g.,*

*McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). *See also, United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), n. 7. The police may also suffer civil liability if the constitutional rights of the person arrested are violated. 42 U.S.C. § 1983. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1981). This Court cannot sanction willful and recurrent violations of the law, and thus, future violations of the statutes governing peace officers' authority to arrest may trigger application of the exclusionary rule and require suppression of evidence obtained in the course of an extraterritorial arrest.

 The right of privacy enunciated in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), does not apply to the recording of the defendant's conversations with the informant. The defendant had no reasonable expectation of privacy in carrying out his illicit transactions with the informant. *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); *On Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952).

Accordingly, we reverse the ruling of the district court suppressing the evidence and statements obtained as incidents of the defendant's arrest, as well as the recording of the transactions between the defendant and the informant, and remand to the district court for further proceedings consistent with the directions contained in this opinion.

DUBOFSKY, LOHR and QUINN, JJ., dissent.

QUINN, Justice, dissenting:

I respectfully dissent from that part of the opinion which reverses the suppression of the defendant's confession and the items seized from his place of business pursuant to the consent search conducted immediately after his arrest. Under the totality of circumstances the officers' conduct in effectuating the arrest violated Article II, Section 7, of the Colorado Constitution. Because the defendant's confession as well as the consent search followed so closely upon the unconstitutional arrest, the district court properly suppressed both the confession and the fruits of the search. I agree with that part of the majority opinion reversing the suppression of the defendant's conversations with the police informer, since the defendant had no reasonable expectation of privacy in these pre-arrest conversations.

Although the court concedes the Denver officers had no statutory authority to effectuate the warrantless arrest of the defendant, nevertheless it upholds the arrest because, in its view, "a peace officer outside the territorial limits of his authority does not have *less* authority to arrest than a person who is a private citizen." I find this "private citizen" rationale unacceptable. It frustrates the legislative scheme circumscribing the arrest powers of police officers beyond the territorial boundaries of their authority and *pro tanto* undercuts the constitutional protection against the unreasonable seizure of one's person as guaranteed by Article II, Section 7, of the Colorado Constitution.

The General Assembly, by granting statutory powers of arrest to private persons, section 16–3–201, C.R.S.1973 (1978 Repl.Vol. 8), did not thereby intend to grant municipal officers statewide commissions to cross clearly defined governmental boundaries in order to effectuate arrests beyond the territorial limits of their authority. If such were the legislative intent, the "fresh pursuit" provisions of section 16–3–106, C.R.S. 1973 (1978 Repl.Vol. 8), would be utterly superfluous. Far from unessential, these provisions help to preserve the political autonomy of municipal and county subdivisions of government by limiting the extraterritorial authority of municipal police officers to the carefully defined exigencies therein described.

This reasonable circumscription of arrest powers is not without constitutional signifi-

cance to the security of one's person from unreasonable searches and seizures. *Colo. Const.* Art. II, Sec. 7. Conceding that a statutory violation by a governmental officer need not rise *per se* to the level of constitutional significance for purposes of the exclusionary rule, our prior case law indicates that the unjustified exercise of extraterritorial arrest powers by a police officer does implicate constitutional interests. *People v. Lott*, 197 Colo. 78, 589 P.2d 945 (1979), illustrates this principle. There, officers of the Wheat Ridge police department learned of a burglary in Wheat Ridge and, without having obtained an arrest warrant or having enlisted the assistance of Denver police, crossed over into Denver several hours after the burglary and arrested the defendants at a halfway house where they resided. In upholding the trial court's suppression of the evidence seized incident to the arrest, this court stated:

"The district court ruled that since they were not in fresh pursuit, the officers lacked authority to arrest outside the territorial limits of their authority. Sections 16–3–106, 201 and 202, C.R.S.1973 and *People v. Bloom*, 195 Colo. 246, 577 P.2d 288 (1978).

"We agree with the trial court that the officers were not in fresh pursuit. The officers had received notice of the alleged burglary at approximately 12:30 p.m. Between 12:30 and 6:00 p.m. the officers investigated the crime. By 2:30 or 3:00 p.m. the investigation had focused on the appellees. The district court ruled, and we agree, that there was time to have obtained an arrest warrant or to have enlisted the assistance of Denver police before arresting the appellees at 6:00 p.m." 197 Colo. at 81, 589 P.2d at 947.

Likewise, in *People v. Schultz*, Colo., 611 P.2d 977 (1978), where Larimer County sheriff's officers obtained an arrest warrant and arrested the defendant in Weld County, this court upheld the arrest on the basis of the very factors which are noticeably lacking in the instant case:

"In this case, the arresting officers obtained a warrant and enlisted the aid of both the Greeley police and the Weld County Sheriff's office, both of whom were authorized to execute warrants in Weld County. Since officers with authority to arrest in Weld County were present during the defendant's arrest, we can perceive no reason to hold the arrest invalid." Colo., 611 P.2d at 978–79.

*People v. Bloom*, 195 Colo. 246, 577 P.2d 288 (1978), relied upon by the majority to sustain the arrest, is clearly distinguishable from the facts of this case. In *Bloom*, the Littleton police officer making the arrest in Denver was a member of an L.E.A.A. funded Metropolitan Enforcement Group which had been formed by the written agreement of several municipalities for the purpose of combatting the drug problem in Denver. Although not mentioned in the *Bloom* opinion, it is reasonable to assume that the Littleton officer was specially commissioned as a police officer in the respective municipalities which were parties to the agreement. But even if he were not, it is clear from the opinion that the officer effecting the arrest was assisted by two Denver police officers, both of whom had lawful authority to make the arrest.

If the Denver officers in this case had been confronted with an extraterritorial emergency calling for an immediate police response, there would have been no constitutional impediment to their crossing into Adams County and, if necessary, making an arrest. No such emergency existed here, however. Nor did the extraterritorial arrest result from an inadvertent or good faith mistake on the part of the officers about the legality of their conduct. On the contrary the officers, at all times acting in their official capacities, knew they were exceeding the territorial boundaries of their authority in making the arrest. Although their pre-arrest investigation took place from 9:00 a. m. to 2:00 p. m., they made no effort to solicit the assistance of officers in Adams County, where the criminal activity was taking place, or to obtain an arrest warrant under Crim.P. 4. Their knowing disregard of the territorial boundaries of their authority, coupled with their failure to avail themselves of simple procedures readi-

ly available for legitimizing an extraterritorial arrest, place their actions within the zone of constitutional unreasonableness under Article II, Section 7, of the Colorado Constitution.

Since both the confession and the search followed immediately upon the illegal arrest, I would uphold the district court's suppression of the defendant's confession and the objects seized in the consent search. *See, e. g., Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *McCall v. People*, Colo., 623 P.2d 397 (1981); *People v. Lowe*, Colo., 616 P.2d 118 (1980); *People v. Moreno*, 176 Colo. 488, 491 P.2d 575 (1981).

I am authorized to say that DUBOFSKY and LOHR, JJ., join me in this dissent.