STATE OF MAINE

KNOX, ss.

STATE OF MAINE

DEC 18 2002

STATE OF MAINE

v.

PENNY S. PEARSON,

Defendant

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-02-375

JP - KNO - 12/15

DECISION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

DEC 20 2002

This matter is before the court on the defendant's Motion to Dismiss/Suppress, the basis for which is the claim that she was stopped and detained in the Town of Washington by a municipal police officer from Waldoboro who had no authority to act in the former town and who was not in her "fresh pursuit."

At the hearing on the motion, the only witness was Waldoboro Police Officer Jamie Wilson. His testimony, which the court finds to be credible, was that on June 6, 2002, he was on patrol in Waldoboro when, at about 3:45 p.m., he received a complaint from Michael Simmons, the proprietor of Michael's Garage in that town. Simmons told him that a woman had stopped at his business and wanted a piece of paper and a pen. She had also asked for marijuana, and had acted "strange." According to Simmons, the woman then gave him a note which read, "I am being followed, note my car and me. I am headed to Manchester." Simmons described the car the woman was driving as a gold Buick with Massachusetts plates.

As a result of Simmons' information, Wilson went into the town section of Waldoboro looking for the woman in the Buick.

Shortly afterwards, a dispatcher called Wilson and told him that a woman had stopped at a residence on the Washington Road in Waldoboro where a similar

1

encounter had taken place as had occurred at Michael's Garage. As a result, Wilson turned onto the Washington Road, also known as Route 220, to look for the woman referred to in these reports. During this trip, he learned that the dispatcher had been in contact with other law enforcement agencies and that officers from the Knox County Sheriff's Department and the Maine State Police were heading in his direction on Route 220.

As Wilson proceeded on Route 220, he became aware that he had left Waldoboro and had entered Washington in Knox County -- a different town in a different county than where he was commissioned with law enforcement authority.

At approximately one or two miles across this municipal line, and about 29 minutes from the time of the first complaint, Wilson came across a Buick which matched the description given earlier, parked in a driveway by a farm. He pulled in behind the car, and, after "calling-in" the plate registration number to a dispatcher, walked up to the driver's side window of the car and asked the female operator if she were alright. He found that she was talking on a cell phone whereupon she handed Wilson the phone and asked him to talk with the other party on the phone. Wilson discovered in his conversation with the other party that he was the woman's father who asked Wilson if his daughter had been drinking. The conversation concluded and Wilson noted that the woman had a beer can between the car seats and that she had taken a sip from the can while they spoke.

Again, Wilson asked the woman if she were okay, and she responded that she was not, that she had "shit out several bags of heroin," and that, "they are after me." At this, Wilson told the woman that everything was okay and he would look after her. During this time, the officer smelled alcohol coming from the vehicle and that the driver

2

seemed very confused. Although Wilson opined that the driver seemed impaired, he did not pursue that problem as officers from Knox County and the State Police arrived at about that time upon which he returned to Waldoboro.

According to Officer Wilson, his purpose in finding the woman in the gold Buick, presumably the defendant, was to make sure she was okay. He also acknowledged in his testimony that neither the complainant nor the dispatcher had told him that the woman had been drinking or was under the influence.

Title 30-A M.R.S.A. § 2671(2)(E) provides, in part, that, "No police officer has any authority in criminal or traffic infraction matters beyond the limits of the municipality in which the officer is appointed, except to: . . . Arrest a person who travels beyond the limits of the municipality in which the officer is appointed when in fresh pursuit of that person." "'Fresh pursuit' means instant pursuit of a person with intent to apprehend . . ." 30-A M.R.S.A. § 2671(2)(E)(2).

Because it is plain that Officer Wilson was outside of his municipality when he found the defendant, and was not in "fresh pursuit" of her, the defendant asks that the charge of Operating Under the Influence pending against her be dismissed or, failing that, that the evidence seized from her be suppressed.

As to the former request, the defendant cites no law that would serve as a basis to dismiss a case in which an offending driver was discovered outside the jurisdiction of the officer who found her. Accordingly, the court will decline to dismiss this charge particularly where, as here, the complaint was brought by an officer with appropriate authority to act in Knox County.

With reference to the request to suppress the evidence seized from the defendant after the "stop" was made in Washington, the defendant relies on

jurisprudence which would allow such a remedy under certain circumstances, even though suppression of evidence is ordinarily associated with a police officer's violation of a suspect's constitutional rights in order to deter such serious misbehavior. No interests of constitutional import, however, have been associated here with the statutory policy of having municipal police officers act within the boundaries of their town, nor with the arguable desirability of having a suspect apprehended by a certain type of law enforcement official even though in Maine, at least, all full-time police officers receive the same training. 25 M.R.S.A. § 2804-C(1).

Whether suppression of evidence is an appropriate consequence of extra-territorial action by a police officer need not be addressed here, however. That is because, first of all, there was no "stop" effectuated by Officer Wilson. The defendant stopped herself and no evidence was offered to the court that she could not have left the scene in Washington without interference by Wilson.

More importantly, the testimony of Wilson yields the conclusion that he did not leave Waldoboro on an excursion to ferret out crime -- a police activity which may be cited as a basis to suppress evidence. *State v. Jolin*, 639 A.2d 1062, 1064 (Me. 1994) (citing *People v. Wolf*, 635 P.2d 213, 217 (Colo. 1981)). Instead, while the departure from Waldoboro was a knowing one, it was undertaken solely to ascertain the welfare of the woman in the Buick who had been acting strange, who had told a complainant that she was being followed, and had asked that she and her car be noted. When a similar report was made, it was entirely reasonable, indeed laudable, for Wilson to go looking for this motorist, even it if meant intentionally crossing a municipal line, to locate her and offer assistance until appropriate officials could arrive. Indeed, his actions at the driveway corroborate this intent. His first question to the defendant was if she were all

4

right, and then later to assure her that he would look after her when she told him that she was not okay because, "they are after me."

From all of this, the court concludes that even though Officer Wilson violated the fresh pursuit statute, he did so to assist a motorist whom he reasonably believed to be in need of help or at risk of harm. By the same token, his actions in Washington violated no rights of the defendant. To impose the sanction of the exclusion of evidence which Wilson, or the other officers, saw and heard in this case is not warranted under these circumstances nor required by our law.

Accordingly, the entry will be:

Motion to Dismiss/Suppress is DENIED.

So ordered.

Dated: December 18, 2002

John R. Atwood
Justice, Superior Court

State's Attorney:
Geoffrey Rushlau, Esq.
District Attorney
62 Union Street
Rockland, ME 04841

Defendant's Attorney:
Michael Turndorff, Esq.
9 Town Hall Place
Brunswick ME 04011

5