**UNITED STATES of America**

v.

**John A. DeVAUGHN.**

**Crim. No. K–75–0112.**

United States District Court,
D. Maryland.

March 26, 1976.

Jervis S. Finney, U. S. Atty., Herbert Better and Jeffrey S. White, Asst. U. S. Attys., D.Md., Baltimore, Md., for plaintiff.

Peter G. Angelos, Stephen B. Caplis and Jack Rubin, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.*

The defendant, John A. DeVaughn, is indicted in this case under thirty counts charging, *inter alia*, extortions under 18 U.S.C. § 1951, income tax violations under 26 U.S.C. § 7201 and § 7206(1), and perjuries under 18 U.S.C. § 1621. Three counts, namely, Counts 8, 9 and 10, pertain to charges pursuant to 18 U.S.C. § 1621. The defendant has moved to quash those counts of the indictment, and in the alternative to suppress the use by the Government of a transcript of a question and answer proceeding at which defendant made certain statements upon which those latter charges are based.

On May 24, 1973, the defendant De-Vaughn [1] and his wife, Carolyn M. De-Vaughn, in the status of taxpayers, were asked to come to the office of the Intelli-gence Division, Internal Revenue Service (hereinafter IRS), Baltimore, Maryland. At that time, questions were asked by a Special Agent of the IRS and answers were given by both Mr. and Mrs. DeVaughn. The interview was recorded. Both taxpayers were represented by counsel who was present throughout the question and answer proceeding. This Court has previously determined, as set forth orally on the record in a pre-trial proceeding, that the defendants were appropriately advised of their "*Miranda*"-type rights. Neither Mr. nor Mrs. DeVaughn during or subsequent to the question and answer proceeding requested the opportunity to examine or to correct the transcript of that proceeding.

At the time of the said proceeding on May 24, 1973, there were in force and effect the following provisions of the Handbook for Special Agents utilized by the IRS:

246.541(1)(j)—Offer to allow subject to make any statement for the record, and, if advisable, an opportunity to examine and sign the transcript.

246.6(1)—Review and corrections—Every record of an interview should be carefully reviewed for any typographical errors, and for accuracy of context. If the statement is to be examined by the subject, he may be permitted to correct typographical errors or to make minor modifications of his testimony. The subject should never be permitted to alter the record, or delete any of his testimony. He may, however, submit an affidavit or give testimony modifying his original statements.

246.6(3)—Persons entitled to copies— Upon request, a copy of an affidavit or transcript of a question and answer statement will be furnished a witness promptly, except in circumstances deemed by the

---

* This opinion is being filed in the midst of trial. The substance of it has previously been set forth in oral comments and rulings by this Court made on the record in open Court prior to trial.

1. One or more of the 30 counts name as defendants six other persons in addition to De-Vaughn. One of those six is the wife of the defendant, Carolyn M. DeVaughn. The latter, along with all of the defendants other than the defendant John A. DeVaughn, have prior to the date of the filing of this opinion been sentenced after entering guilty pleas. Originally, the defendant John A. DeVaughn pled guilty and was sentenced but subsequently was permitted to withdraw his guilty plea for reasons, set forth orally by this Court on the record in this case, which speak for themselves and are not reviewed herein.

Regional Commissioner to necessitate temporarily withholding a copy.

Additionally, at that time there was in force and effect the following policy statement of the Commissioner of Internal Revenue:

P–9–31—

Upon request, a copy of an affidavit or transcript of a question and answer statement will be furnished a witness promptly, except in circumstances deemed by the Regional Commissioner to necessitate temporarily withholding a copy.

Defendant's primary contention herein with regard to the above-cited provisions of the Handbook and the Policy Statement is that those provisions *required* the IRS specifically *to inform* the DeVaughns in May 1973, as taxpayers who had been subjected to a question and answer proceeding, that each of them had the right to examine and correct the transcript thereof. The regulations, on their face, do not themselves so provide.[2] Defendant has secondarily taken the position that as a matter of practice and policy the IRS in May 1973, and thereafter, if not before, did in many cases inform a taxpayer of his right to see his transcript and correct it. This Court has held an evidentiary hearing with regard to that latter contention and has made findings on the record which, in the opinion of this Court, have called upon and continue to call upon this Court to find and to hold that the IRS had no such uniform and customary policy and that it did not discriminate against or treat in an unequal or unfair manner the defendant as a taxpayer as opposed to other taxpayers.

■ Defendant's third line of contention is that the failure of IRS officials to publish in the Federal Register any of the above-referenced provisions of the Handbook or Policy Statement, and/or to make said documents available to the public on or before May 24, 1973, was violative of the provisions of the Federal Register Act and of the Freedom of Information Act.

The Federal Register Act, 44 U.S.C. § 1501 *et seq.*, provides, in pertinent part:

(a) Proclamations and Executive Orders; documents having general applicability and legal effect; documents required to be published by Congress. There shall be published in the Federal Register—

(1) Presidential proclamations and Executive orders, except those not having general applicability and legal effect or effective only against Federal agencies or persons in their capacity as officers, agents, or employees thereof;

(2) documents or classes of documents that the President may determine from time to time have general applicability and legal effect; and

(3) documents or classes of documents that may be required so to be published by Act of Congress.

For the purposes of this chapter every document or order which prescribes a penalty has general applicability and legal effect.

44 U.S.C. § 1505.

5 U.S.C. § 552, the Freedom of Information Act, provided, on May 24, 1973, in pertinent part:[3]

(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

(A) descriptions of its central and field organization and the established

---

**2.** A detailed analysis and discussion thereof has been set forth orally on the record by this Court at a prior date and need not be further discussed in the within opinion, except to note that no provision of the Handbook or of the Policy Statement *requires* IRS to notify a taxpayer of his opportunity to read or do anything in connection with a question and answer transcript. Handbook section 246.546(1)(j) provides for IRS agents to "[o]ffer * * *, if advisable, an opportunity to examine * *".

Handbook section 246.6(1) includes the clause: "*If* the statement is to be examined * * *" (emphasis added). Handbook section 246.6(3) and the Policy Statement provision start with the words, "Upon request * * *".

**3.** Amendments to the Freedom of Information Act adopted by the Congress since May 24, 1973 would not appear relevant and material to the resolution of any of the issues considered in this opinion.

places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and

(C) administrative staff manuals and instructions to staff that affect a member of the public;

unless the materials are promptly published and copies offered for sale. * *

(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person. On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action. In the event of noncompliance with the order of the court, the district court may punish for contempt the responsible employee, and in the case of a uniformed service, the responsible member. Except as to causes the court considers of greater importance, proceedings before the district court, as authorized by this paragraph, take precedence on the docket over all other causes and shall be assigned for hearing and trial at the earliest practicable date and expedited in every way.

* * * * * *

(b) This section does not apply to matters that are—

(1) * * *

(2) related solely to the internal personnel rules and practices of an agency;

(3)–(9) * * *

(c) This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section. This section is not authority to withhold information from Congress.

On or shortly after December 28, 1973, Policy Statement P–9–31 was placed in the Freedom of Information Reading Room of

the IRS. On November 13, 1974, the IRS Handbook for Special Agents, which Handbook included sections 246.541:(1)(j), 246.-6:(1), and 246.6:(3), was transmitted to the Director of the Public Affairs Division of the IRS for placement in the said Reading Room. At no time have the said Policy Statement or the said sections of the Handbook been published in the Federal Register.

Whether the Federal Register Act, as such, requires that those provisions of the Policy Statement and Handbook should have been published in the Federal Register depends upon whether a prior presidential determination to that effect has been made. As far as the record in this case discloses and also so far as this Court has been able to ascertain, no such presidential determination has been made. Accordingly, Federal Register publication of the Handbook and Policy Statement was not required by the Federal Register Act.

Whether, on the other hand, such publication in the Federal Register was required by the Freedom of Information Act raises in this Court's opinion more serious issues. In *Hawkes v. Internal Revenue,* 467 F.2d 787 (6th Cir. 1972), and 507 F.2d 481 (6th Cir. 1974), the Sixth Circuit held that what were referred to (467 F.2d at 789) as "specified portions of the Internal Revenue Manual relating to the examination of returns, interrogation of taxpayers by agents of the Service and other matters which Hawkes felt would be useful in preparing a defense" should have been made available to Hawkes in accordance with 5 U.S.C. § 552(a)(2)(C) and were not exempted from such disclosure requirements by 5 U.S.C. § 552(b)(2). The analysis set forth by Judge Celebrezze in *Hawkes* is adopted by this Court. Regardless of whether the exact provisions of the Handbook and of the Policy Statement which are involved in this case were before the Court in *Hawkes,* the reasoning in *Hawkes,* with which this Court is in agreement, points to the conclusion that the provisions relevant herein are "administrative staff manuals and instructions to staff that affect a member of the public", as those words are used in 5 U.S.C. § 552(a)(2)(C), and thus to the further conclusion that those provisions should have been made available to the public on or before May 24, 1973.

The issue of whether or not those provisions are also within one or more or all of the subsections of 5 U.S.C. § 552(a)(1) was seemingly not present in *Hawkes* either at the appellate or trial stages of the litigation in that case. Herein, however, that question must be faced. Neither the legislative history of the Freedom of Information Act nor the case law throws much light on the subject. However, each of the provisions of 5 U.S.C. § 552(a)(1)(A), (B), and (C) would seem to suggest publication "in the Federal Register for the guidance of the public" within the meaning of the introductory words of subsection (1) of 5 U.S.C. § 552(a).

The position of the defendant is that if such a violation by the IRS of the Freedom of Information has occurred, then this Court should grant the motion of the defendant DeVaughn to quash Counts 8, 9 and 10 of the indictment, and to suppress the direct or indirect use of the transcript of the question and answer proceeding during the trial of this case. Defendant contends that the violation by IRS of the latter's Freedom of Information Act responsibilities have, under the circumstances as revealed by the record which exists in this case at this time, "adversely affected" the defendant within the meaning of 5 U.S.C. § 552(a)(1), which provides in part that "[e]xcept to the extent that a person has actual and timely notice of the terms thereof, a person may not * * * be *adversely affected* by * * * a matter required to be published in the Federal Register and not so published." (Emphasis supplied.) In that connection, defendant alleges that, prior to the indictment in this case, neither he nor any of his attorneys possessed "actual notice" of the said provisions of the Handbook or of the Policy Statement and that neither the defendant nor his attorneys knew that they had a right to obtain a copy of the May 24, 1973 question and answer transcript and/or to file additional or supplementary statements correcting or chang-

ing anything the defendant may have said on May 24, 1973.

■ The offense of perjury under 18 U.S.C. § 1621 is complete when the statement has been made. Any subsequent correction of a false statement, though it may well go the issue of whether the defendant wilfully and intentionally made a false statement, does not in and of itself automatically and *per se* wipe out the offense. *See United States v. Norris,* 300 U.S. 564, 573–77, 57 S.Ct. 535, 538–40, 81 L.Ed. 808, 812–814 (1937). Nor is there anything in any of the provisions of the applicable Policy Statement or Handbook sections which permit a taxpayer to obliterate anything which he has stated in a question and answer proceeding. Indeed, all that a taxpayer may do is to offer "to correct typographical errors" or make modifications which, according to Handbook section 246.6(1), are to be "minor" in nature.

Defendant further argues that his failure to have the opportunity to correct the question and answer transcript of May 24, 1973 colored the entire investigation against him and led the IRS, the United States Attorney's Office, and any and all federal officials involved, to conclude that he was guilty of both lies and evasions on May 24, 1973, and also led them to harbor misimpressions which the defendant could easily have corrected if he had known he had the right so to do; and that neither the defendant nor his counsel knew that they had the right so to do or were afforded the opportunity so to do.

Jeffrey S. White, Esq., Assistant United States Attorney, has informed this Court that from and after June 1974 he coordinated, directed and supervised the investigation and development of the charges against all of the defendants in this case, after the IRS had presented to him certain information which led to presentation of this case to the Grand Jury. On January 7, 1975, Mr. White wrote to Mr. DeVaughn as follows:

January 7, 1975

Mr. John A. DeVaughn
Box 334
Leeson Cove Drive
Lusby, Maryland 20657

Dear Mr. DeVaughn:

As you know, the Federal Grand Jury for the District of Maryland has been for some months conducting an investigation of illegal activities in connection with the Calvert Cliffs Nuclear Project.

The Grand Jury has been presented with evidence indicating that you may have been involved in illegal activities. Before making any final decisions, the Grand Jury has decided that it would like to have the advantage of hearing your testimony on these matters and reviewing any and all relevant documents in your possession.

Therefore, on behalf of the Grand Jury, I extend to you an invitation to testify before the Grand Jury at 10:00 A.M. in the morning on Thursday, January 16, 1975. I would appreciate it if your attorney would notify me by no later than Monday, January 13, 1975 as to whether or not you will accept this invitation.

Very truly yours,

GEORGE BEALL
United States Attorney
By _____/s/_____
Jeffrey S. White
Assistant United States Attorney
439 U. S. Courthouse
111 N. Calvert Street
Baltimore, Maryland 21202

The parties have stipulated that Mr. White prepared the following document and have also stipulated to the factual correctness of the contents thereof:

TO : FILE DATE: February 10, 1975

FROM : Jeffery S. White JSW:BJ
 Assistant U. S. Attorney

SUBJECT: <u>CALVERT CLIFFS—CAROLYN AND JOHN DEVAUGHN</u>

On January 28, 1975, at approximately 4:00 P.M. I met in my office with attorney Russell Smouse. Mr. Smouse informed me that he had been retained by Mr. and Mrs. DeVaughn at least for the purpose of advising them * * *. Mr. Smouse indicated that he did not know whether or not he would be representing the DeVaughns in connection with any other proceedings.

Mr. Smouse asked me as to what possible violations the DeVaughns could be charged with. I informed him that they could be charged with extortion (18 U.S.C. § 1951), interstate transportation in aid of racketeering-extortion (18 U.S.C. § 1952), perjury at a Q&A session before the IRS (18 U.S.C. § 1621) and income tax evasion (26 U.S.C. § 7201). * * *

---

On January 30, 1975, Mr. Smouse addressed the following letter to Mr. White, with a copy to Mr. and Mrs. DeVaughn:

Jeffery S. White, Esq.
Assistant U. S. Attorney
405 U. S. Court House
Baltimore, Maryland 21202

Dear Mr. White:

This will confirm our conversation of Tuesday, January 28, 1975, in which I advised that John A. DeVaughan [sic] and Caroline [sic] M. DeVaughan [sic] would exercise their Fifth Amendment rights if called as witnesses before any Federal Grand Jury.

I trust this will answer your inquiry in the matter.

Very truly yours,
/s/
H. Russell Smouse

HRS;gm
cc: Mr. and Mrs. John A. DeVaughan [sic]

---

The parties have stipulated that Mr. Smouse is a former Assistant United States Attorney and is an experienced trial attorney who has handled a number of criminal cases in this Court over a period of years including cases involving one or more offenses of the type involved in this case. There is no indication that Mr. Smouse did not know, when he was representing Mr. and Mrs. DeVaughn and specifically during his conference in January 1975 with Mr. White which took place prior to the indict-

ment being handed down, that he could have made known to Mr. White any information which he desired so to do. Nor is there anything in the record to show that the defendant did not have the opportunity to make known to the government prosecuting and investigating officials and, through the prosecutor, the Grand Jury, any clarifying or corrective statements which the defendant or his wife desired to offer with regard to their answers to the questions put to them during the May 24, 1973 proceeding. In that latter connection it is noted that Mr. White specifically informed Mr. Smouse during their conference of the possible perjury violations growing out of the question and answer proceeding.

This Court cannot accept defendant's naked contention that an experienced attorney such as Mr. Smouse did not know that he could have offered and made known to the United States Attorney's Office and/or to the IRS such supplementary or additional statements of Mr. and Mrs. DeVaughn, by way of correction or otherwise, if his client or clients had desired to have him do so. It may well be that his clients did not desire him so to do. But for whatever reason, neither of the DeVaughns or their attorney so did. There is nothing in the record to suggest they or their counsel would have acted differently if they had in fact known of the provisions of the Handbook and/or Policy Statement. This Court has stated on several occasions, on the record, that counsel for the defendant De-Vaughn could have had, if he had desired the same, the opportunity prior to trial, to have an evidentiary hearing at which time the defendant could have introduced any and all appropriate evidence that the defendant desired to produce showing or tending to show that he was "adversely affected" by the failure of the IRS to publish in the Federal Register in the manner discussed *supra*. Defendant himself and his counsel on the record informed this Court that they did not desire to produce any such evidence or to call any such witness in connection therewith, including Mr. Smouse, Samuel Silber, Esq., a tax attorney who advised Mr. DeVaughn at one or more

times from and after May 1973, or any other attorney or person.

Additionally, it is to be noted that, as stated *supra,* the relevant and above-quoted provisions of the Handbook and of the Policy Statement were made available to the extent required by 5 U.S.C. § 522(a)(2) no later than November 13, 1974, and that the Policy Statement was earlier made available, i. e., by December 28, 1973 at the latest. The Policy Statement taken by itself would appear to make known to any interested person the possibility of his obtaining for examination a question and answer statement of the kind recorded on May 24, 1973 without reference to any of the provisions of the Handbook. However, in any event, before the end of November 1974 and over two months in advance of Mr. Smouse's meeting with Mr. White in January 1975, all of those provisions of the Handbook and of the Policy Statement had been made public as required by 5 U.S.C. § 552(a)(2), although up to and including the date of this opinion the same have not been published in the Federal Register as this Court believes is required by 5 U.S.C. § 552(a)(1).

 If the IRS has indeed failed to live up to the requirements of 5 U.S.C. § 552(a)(1), the Government would appear ultimately to have the burden of persuasion on the factual issue of whether the defendant has or has not been "adversely affected" by the nonpublication of the several provisions of the Handbook and of the IRS Policy Statement. However, the defendant would also seem to have the burden first to come forward with at least some evidence indicating that he has been so "adversely affected." *Cf. Alderman v. United States,* 394 U.S. 165, 183, 89 S.Ct. 961, 972, 22 L.Ed.2d 176, 192 (1969), citing and quoting from *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307, 311 (1939); 3 C. Wright, Federal Practice & Procedure (Criminal), § 675, at p. 127 (1969 ed.), and authorities cited thereat. Nothing in the record in this case reveals that the defendant has been so adversely affected. Accordingly, the last unnumbered paragraph of 5 U.S.C. § 552(a)(1) does not call

for the application of the statutory exclusion seemingly implicitly provided for by that statute in instances in which it has been violated and such violation has "adversely affected" a defendant.[4]

There remains the question of whether any other principle of law requires the quashing of Counts 8, 9 and 10 and/or the grant of the defendant's motion to suppress the use during trial of this case of the May 24, 1973 question and answer transcript. Insofar as dismissal of those three counts of the indictment is concerned, that is a drastic step which courts are loathe to take even when evidence obtained unconstitutionally has been presented to a Grand Jury. *See United States v. Calandra,* 414 U.S. 338, 344–45, 94 S.Ct. 613, 618, 38 L.Ed.2d 561, 569 (1974); *cf. Sullivan v. United States,* 348 U.S. 170, 173–74, 75 S.Ct. 182, 184–85, 99 L.Ed. 210, 216 (1954). With regard to suppression, exclusive of the statute itself, the principles governing the application of the exclusionary rule would seem to dictate the nonapplication of that rule in this case. In *United States v. Heffner,* 420 F.2d 809 (4th Cir. 1969), Judge Winter held that whether or not the IRS was required to include among its rules and regulations a *Miranda*-type of warning requirement before the commencement of certain questioning of taxpayers, the IRS once having adopted such regulations was required to follow and implement them; and that a failure so to do required suppression of statements obtained from a defendant who had not been warned as required by those regulations. *See also Francis v. Davidson,* 340 F.Supp. 351 (D.Md.), *aff'd,* 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972), and cases cited at 340 F.Supp. 365–66.

In *United States v. Walden,* 490 F.2d 372 (4th Cir.), *cert. denied,* 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974), Judge Winter, in a case in which the Marines had engaged in an investigation in contravention of the Posse Comitatus Act of 1878, 18 U.S.C. § 1385, held that evidence obtained in the course of such violation should not be excluded. To begin with, Judge Winter noted (at 376) that there was "totally lacking any evidence that there was a conscious, deliberate or willful intent on the part of the Marines or the Treasury Department's Special Investigator to violate the Instruction or the spirit" of the statute or any regulation. That same lack exists in this case. Indeed, as is indicated by the Government's position in *Hawkes,* the Government was litigating in May 1973 the question of the applicability of 5 U.S.C. § 552(a)(2) to the type of Handbook and Policy Statement provisions involved herein. If the Government was litigating the applicability of (a)(2), rather obviously its position was similar as to (a)(1).

In *Walden,* Judge Winter further determined that there was no need to apply the exclusionary rule in that case in order to deter future violations of the kind which had taken place in *Walden.* In this case, there would seem no need to apply the exclusionary rule in order to deter future violations of the Freedom of Information Act—violations which can easily be cured by civil suits as has been made evident by the result in *Hawkes.* Additionally, Judge Winter noted in *Walden* (at 377) that the regulation he dealt with therein was "for the benefit of the people as a whole, but not one that may fairly be characterized as expressly designed to protect the personal rights of defendants", citing on a *cf.* basis *Heffner.* That comment by Judge Winter would not appear applicable herein. Rather, the provisions of 5 U.S.C. § 552(a)(1) would appear designed to provide possible benefit to taxpayers such as the defendant DeVaughn. However, that one factor does not outweigh the other relevant factors discussed herein so as to cause a result different than in *Walden.*

In *Walden,* Judge Winter also noted (at 377) that the regulation involved provided

---

4. There is no statutory exclusionary language in 5 U.S.C. § 552(a)(2). Accordingly, even if the IRS was required to make available for public information the Handbook and Policy Statement provisions herein involved, at earlier dates then occurred and indeed on or before May 24, 1973, such failure alone would not call for the *per se* exclusion of the answers to the questions on May 24, 1973.

784

"no mechanism for its own enforcement—and especially no criminal sanction for its violation—and that its legal effect was far from obvious" and that that meant that "admission of the evidence of guilt does not require the court to condone 'dirty business.'" In this case, what is really at issue, given this Court's view as to the meaning of the Policy Statement and the Handbook provision, and its findings of fact with regard to lack of discrimination, is not a violation of the Handbook or of the Policy Statement, but rather at the most of the Freedom of Information Act's requirement of publication in the Federal Register. That hardly raises herein the spectre of "dirty business". Indeed, as indicated *supra,* the issue of whether the Freedom of Information Act has or has not been violated in this instance is a very close one.

Neither the Supreme Court's approach in *Calandra* or in any other case known to this Court, nor the Fourth Circuit's approach in *Walden* support a *per se* application of the exclusionary rule because of a violation of the Freedom of Information Act. Nor do any of the provisions set forth in a A Model Code of Pre-Arraignment Procedure adopted by the American Law Institute in May 1975 in any way suggest a contrary result.[5] Rather, those provisions and commentaries suggest that such a violation, in order to bring about the application of the exclusionary rule, should be "substantial"[6] in the sense that the violation was "gross, wilful and prejudicial to"[7] the defendant or "was of a kind likely to lead [the defendant] * * * to misunderstand [his] * * * position or legal rights" or to have substantially affected what he may have done in connection with making any statement in

this case.[8] To reiterate, there has been in this case no gross or wilful violation by any government official. Nor was the defendant effectively deprived of his right to make any supplementary or corrective statement relating to the answers which he gave to questions on May 24, 1973, before the Grand Jury handed down the indictment in this case.

For the reasons set forth *supra* in this opinion, the defendant's motions to quash and to suppress are denied. The Government will be permitted appropriately to utilize the question and answer transcript of the proceeding on May 24, 1973 insofar as the answers of the defendant John A. DeVaughn are concerned.[9]

---

**5.** *See* §§ 150.2, 150.3, 160.7 and § 290.2 of the Code, and the commentaries thereto. *And see* Coe, *The ALI Substantiality Test: A Flexible Approach to the Exclusionary Sanction,* 10 Georgia L.Rev. 1, 4–5, 36–44 (1975).

**6.** *See* §§ 150.3(1), 160.7(1), and § 290.2(2) of the Code.

**7.** *See* §§ 150.3(2)(a), 160.7(2)(a), and § 290.2(3) of the Code.

**8.** *See* § 150.3(2)(b) of the Code.

**9.** That transcript also includes a few statements by Mrs. DeVaughn. After trial of this case commenced and before the filing of this opinion, counsel for defendants, while preserving all objections previously stated, agreed on the record that defendant had no objection to the total transcript including Mrs. DeVaughn's answers being submitted to the jury if the remainder of the transcript, over defendant's previously stated objections, was going to be admitted.