**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Boyd Vestle HAMILTON, Defendant-Appellee.**

**No. 83SA120.**

Supreme Court of Colorado, En Banc.

July 18, 1983.

Nolan L. Brown, Dist. Atty., John E. Byron, Sr. Deputy Dist. Atty., Alan C. Shafner, Deputy Dist. Atty., Golden, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Sue Ann Fitch, Deputy State Public Defender, Denver, for defendant-appellee.

KIRSHBAUM, Justice.

The People have filed this interlocutory appeal pursuant to C.A.R. 4.1 seeking reversal of the trial court's order suppressing items seized incident to defendant's arrest. The order was based on the trial court's conclusion that in executing an arrest warrant Golden Police Department officers had no authority to arrest defendant in the City and County of Denver. While we agree that the officers had no such authority, we reverse the suppression order under the circumstances of this case.

The pertinent facts are undisputed. During the early evening of July 19, 1982, Golden Police Department officials were informed by a Jefferson County resident that the defendant had sexually assaulted her earlier that day. A warrant for defendant's arrest was obtained on July 20.[1]

At 9:00 a.m. on July 28, 1982, an informant telephoned Golden police detective Lamb and reported that defendant would visit the First Interstate Bank in downtown

---

1. By order of this court, the record has been supplemented by a copy of the warrant. The parties agree that the warrant was valid.

Denver sometime that morning. Lamb and Lt. Foulke, another Golden police officer, immediately went to the bank and awaited defendant's arrival. At 10:49 a.m. defendant entered the bank, at which time the two officers arrested him and seized certain items of personal property incident thereto. Lamb and Foulke then contacted Denver police officers, and a Denver police officer subsequently transported defendant to Denver City Jail. Concluding that the Golden officers had no authority to execute the arrest warrant in Denver, the trial court ordered the seized evidence suppressed.

On appeal, the People assert that any Colorado peace officer acting pursuant to a valid arrest warrant may arrest the person named therein anywhere in Colorado. Whatever policy concerns may be advanced in support of the argument that peace officers should possess such broad authority to execute arrest warrants, we conclude that the General Assembly has adopted a quite different policy with regard to the extraterritorial arrest authority of Colorado peace officers.

The common law of nineteenth century England recognized that the authority of a public official to execute a warrant was limited to the jurisdiction of the judicial officer issuing the warrant, and that unless the warrant itself specifically named a particular official to execute it, a public official could not execute a warrant outside the geographic boundaries of the political entity employing such official. *See, e.g., Rex v. Weir,* 1 Barn. & C. 288, 107 Eng.Rep. 108 (1823); *Gladwell v. Blake,* 1 Cromp. M. & R. 636, 149 Eng.Rep. 1235 (1834). *See also* 2 *Chitty's Blackstone, Commentaries on the Laws of England,* Book IV, ch. 19, p. 236 n. 8 (1874). Early American cases also recognized that a peace officer was prohibited from executing arrest warrants beyond the geographic boundaries of the political entity by which the officer was employed. *See,*

*e.g., Lawson v. Buzines,* 3 Harr. 416 (Del. 1842); *York v. Commonwealth,* 82 Ky. 360 (1884); *Butolph v. Blust,* 41 How.Pr. 481, 5 Lans. 84 (N.Y.Sup.Ct.1871); *Copeland v. Islay,* 19 N.C. (2 Dev. & Bat.) 505 (1837); *Page v. Staples,* 13 R.I. 306 (1881).[2]

In Colorado, as elsewhere, the authority of peace officers to effectuate arrests is now defined by legislation. The General Assembly has dealt specifically with the arrest authority of peace officers in Article 3, Part 1 of Title 16, C.R.S.1973. Section 16–3–102, C.R.S.1973 (1978 Repl.Vol. 8), states as follows:

"(1) A peace officer may arrest a person when:

(a) He has a warrant commanding that such person be arrested; or

(b) Any crime has been or is being committed by such person in his presence; or

(c) He has probable cause to believe that an offense was committed and has probable cause to believe that the offense was committed by the person to be arrested."

In defining the three sets of circumstances authorizing peace officer arrests, the section does not impose territorial arrest limitations on the authority of peace officers to execute arrest warrants. However, section 16–3–106, C.R.S.1973 (1978 Repl.Vol. 8), contains the following critical restrictions upon the arrest authority of peace officers:

"When any peace officer is in fresh pursuit of any alleged offender, having a warrant for his arrest or having knowledge that such warrant has been issued, or, in the absence of an arrest warrant, when the offense was committed in the officer's presence or the officer has reasonable grounds to believe that the alleged offender has committed a criminal offense, and the alleged offender crosses a boundary line marking the territorial

---

**2.** See *In Re Popejoy,* 26 Colo. 32, 55 P. 1083 (1899), wherein this court held that a defendant's voluntary submission to his arrest constituted a waiver of the defendant's right to question his arrest by an Arapahoe County deputy sheriff who, pursuant to a valid arrest warrant, made the arrest in El Paso County. The opinion assumes that the Arapahoe County deputy sheriff had no common law authority outside Arapahoe County to arrest a person who was the object of an arrest warrant.

limit of his authority, such peace officer may pursue him beyond such boundary line and make the arrest, issue a summons and complaint, or issue a notice of penalty assessment."

█ When construing two statutes respecting the same or similar subject matter, full effect must be given to both legislative provisions. *Buck v. District Court,* 199 Colo. 344, 608 P.2d 350 (1980). This court has previously recognized that in enacting section 16–3–106 the General Assembly intended to limit the exercise of the arrest authority delineated by section 16–3–102. *People v. Wolf,* 635 P.2d 213 (Colo.1981).[3]

█ In combination, these two statutes in effect prohibit a police officer "having a warrant" for a person's arrest from crossing the boundary line marking "the territorial limit" of the officer's authority unless the officer "is in fresh pursuit" of the alleged offender. Thus, contrary to the People's assertion, a Colorado peace officer armed with a Colorado arrest warrant has no greater authority to effectuate an arrest pursuant thereto than a peace officer acting on probable cause without such warrant. The statute thus recognizes that in many situations citizens of a particular community may best be served by the requirement that local officers familiar with local neighborhoods accompany peace officers from other jurisdictions seeking to arrest a defendant allegedly present in the community.

Similar statutory limitations on the arresting authority of peace officers prevail in other jurisdictions. *See, e.g.,* Fla.Stat.Ann. § 901.04 (West 1983 Cum.Supp.); La.Code Crim.Proc.Ann. art. 204 (West 1966). It is true that statutes in some jurisdictions expressly authorize extra-territorial execution of arrest warrants by peace officers. *See, e.g.,* Official Code of Ga.Ann. § 17–4–25 (Michie 1982) ("an arresting officer may, in any county without regard to the residence of the arresting officer, arrest any person charged with a crime."); N.H.Rev.Stat. Ann. § 594:7 (1974) (the officer named in an arrest warrant "has power to make the arrest at any time and in any place; and shall have, in any county, the same powers in relation to the process as an officer of that county."); Neb.Rev.Stat. § 29–407 (1979) ("The magistrate issuing any such warrant may make an order thereon authorizing a person, to be named in such warrant, to `execute the same; the person named in such order may execute such warrant anywhere in the state...."). *See also State v. Clingerman,* 180 Neb. 344, 142 N.W.2d 765 (1966).

Our General Assembly has expressly provided that peace officers executing *search* warrants may do so throughout the state. Section 16–3–305(3), C.R.S.1973 (1978 Repl. Vol. 8).[4] The absence of any such language in either section 16–3–102 or section 16–3–106 indicates a deliberate legislative choice to limit the general authority of peace officers to effectuate extra-territorial arrests based upon Colorado arrest warrants. *See* 2 W. Ringle, *Searches & Seizures, Arrests and Confessions* § 23.4(b)(1) (2d ed. 1982).

This court consistently has recognized the requirement that officers acting outside their territorial jurisdictions must obtain the aid of local officers who do have authority to make arrests in the "foreign" jurisdiction, absent fresh pursuit exigencies. In *People v. Lott,* 197 Colo. 78, 589 P.2d 945 (1979), we affirmed the trial court's conclu-

---

3. This appeal does not present any question of the authority of a peace officer to make a "citizen's arrest" in any geographical area. *See* § 16–3–201, C.R.S.1973 (1978 Repl.Vol. 8). *See also People v. Wolf, supra,* and *People v. Bloom,* 195 Colo. 246, 577 P.2d 288 (1978) (cases addressing a private citizen's authority to make an arrest). Moreover, the conduct of the Golden officers did not constitute fresh pursuit. *See Charnes v. Arnold,* 198 Colo. 362, 600 P.2d 64 (1979).

4. Section 16–3–305(3) states in pertinent part as follows:

"Any judge issuing a search warrant ... for the search of a person or for the search of any motor vehicle, aircraft, or other object which is mobile or capable of being transported may make an order authorizing a peace officer to be named in the warrant to execute the same, and the person named in such order may execute the warrant *anywhere in the state.*" (emphasis supplied)

sion that Wheat Ridge Police Department officials who at approximately 3:00 p.m. learned that a burglary suspect would be found at a Denver location at 6:00 p.m. had no authority to arrest the suspect in Denver at 6:00 p.m. Recognizing that the Wheat Ridge officers had no warrant, we pointed out in footnote 1 to that opinion that, assuming the existence of probable cause, a warrantless arrest might have been effectuated by Denver police officials. Contrary to the People's argument here, our approval of the trial court's ruling in *Lott* did not suggest that the presence of an arrest warrant in and of itself would authorize an extra-territorial arrest by peace officers, absent fresh pursuit.

In *People v. Schultz*, 200 Colo. 47, 611 P.2d 977 (1980), we again emphasized the importance of the presence of peace officers authorized to make arrests in the jurisdiction in which the arrest occurs. We there held that it was immaterial who actually executed an arrest warrant when authorized peace officers participated in the arrest process. Finally, *People v. Wolf, supra,* again emphasized our recognition of the General Assembly's prohibition of unilateral extra-territorial arrests by peace officers. These decisions recognize that a peace officer seeking to effectuate an arrest in a jurisdiction other than the one employing such officer must, absent fresh pursuit, obtain assistance from local officers with appropriate arresting authority.

The People argue that Crim.P. 4 authorizes a peace officer possessing an arrest warrant to execute the warrant anywhere within the state. Crim.P. 4(c)(1) contains the following provisions:

"(1) Warrant.

(I) By Whom. The warrant may be executed by any peace officer.

(II) Territorial Limits. The warrant may be executed anywhere within Colorado."

A warrant is a "written order issued by a judge of a court of record directed to any peace officer commanding the arrest of the person named or described in the order." Section 16–1–104(18), C.R.S.1973 (1978 Repl.

Vol. 8). Crim.P. 4(c)(1)(I) recognizes the inherent authority of every peace officer to execute any arrest warrant. It does not expand the territorial limits legislatively imposed upon the exercise of authority by particular peace officers. Crim.P. 4(c)(1)(II) recognizes that arrest warrants are not territorially limited and, therefore, may be executed anywhere in Colorado by an officer with authority to arrest in the particular jurisdiction in which the person named in the warrant is found. Crim.P. 4(c)(1) complements rather than contradicts the territorial limitations on the authority of peace officers the General Assembly has adopted.

■ In the circumstances of this case, the trial court correctly concluded that the Golden police officers exceeded their statutory authority in arresting defendant. However, the sanction of the exclusionary rule is designed to effectuate guarantees against deprivation of constitutional rights. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Violations of statutory provisions are not *per se* violations of constitutionally protected rights. *People v. Wolf, supra. See, e.g., United States v. Walden,* 490 F.2d 372 (4th Cir.), cert. denied, 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974); *United States v. De-Vaughn,* 414 F.Supp. 774 (D.Md.1976), aff'd, 556 F.2d 575 (4th Cir.), *cert. denied,* 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977). *See also United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). *But see Bridges v. Wixon,* 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945). Thus, the evidence seized may be suppressed here only if the unauthorized arrest violated constitutional restraints on unreasonable searches and seizures. U.S. Const. Amend. IV; Colo. Const. art. II, § 7.

■ Here, the warrant itself established probable cause for defendant's arrest. *People v. Gouker,* 665 P.2d 113 (Colo.1983). While the Golden officers were not in fresh pursuit when they entered Denver, they were confronted with the possibility that defendant might complete his visit to the Denver bank before any officer arrived.

The record is silent concerning reasons for the failure of the two officers to telephone Denver authorities until after defendant was detained. However, Denver authorities were ultimately contacted, and defendant was taken to a Denver jail rather than to any Golden institution. Under these circumstances, we conclude that the conduct of Lamb and Foulke, though not authorized, was not so unreasonable as to violate defendant's constitutional protection against unreasonable searches and seizures.[5]

Accordingly, the trial court's order suppressing the evidence seized from defendant at the time of his arrest is reversed. *People v. Wolf, supra.*

The case is remanded to the trial court for further proceedings.

LOHR, J., concurs.

QUINN, J., specially concurs, and ROVIRA, J., joins in the special concurrence.

LOHR, Justice, concurring:

I concur in the opinion and judgment of the court, but consider it appropriate to explain why I view the facts here differently than in *People v. Wolf,* 635 P.2d 213 (1981), a case in which I joined Justice Quinn's dissent. There, Denver officers conducted an investigation of a suspected purchaser of stolen merchandise at his place of business in Adams County. They set up two transactions between an informant and the suspect at that location. The informant was wired with a radio transmitter and the police monitored the conversations between the informant and the suspect from a nearby van. The investigation continued over a five hour period and culminated in the suspect's arrest by the Denver officers at the suspect's place of business in Adams County. No warrant was obtained for that arrest.

Justice Quinn's dissent noted that section 16–3–106, C.R.S.1973 (1978 Repl.Vol. 8) limits the authority of police officers to arrest

outside their jurisdictions to "carefully defined exigencies." 635 P.2d at 218. The dissenting opinion then states:

This reasonable circumscription of arrest powers is not without constitutional significance to the security of one's person from unreasonable searches and seizures. *Colo. Const.,* Art. II, Sec. 7. Conceding that a statutory violation by a governmental officer need not rise *per se* to the level of constitutional significance for purposes of the exclusionary rule, our prior case law indicates that the unjustified exercise of extraterritorial arrest powers by a police officer does implicate constitutional interests.

635 P.2d at 218–219.

Based on a record showing an absence of "an extraterritorial emergency calling for an immediate police response," absence of "good faith mistake on the part of the officers about the legality of their conduct," knowledge of the officers that "they were exceeding the territorial boundaries of their authority in making the arrest," and absence of "effort to solicit the assistance of officers in Adams County ... or to obtain an arrest warrant," the dissenting opinion applied a totality of the circumstances test and adopted the position that the police actions were "within the zone of constitutional unreasonableness under Article II, Section 7, of the Colorado Constitution." 635 P.2d at 219–220.

In contrast, in the present case a warrant was obtained and, as Justice Kirshbaum's opinion and Justice Quinn's special concurrence so well illustrate, the authority of a peace officer to execute a warrant outside his jurisdiction was not free from doubt until today. The egregious disregard for a clear statutory standard which so tainted the police conduct in *People v. Wolf* is simply not present here. The same totality of the circumstances test that yielded the dissenters' conclusion in *People v. Wolf* that the arrest was constitutionally unreason-

---

**5.** Prior to today's decision we have not had occasion to interpret §§ 16–3–102 and 16–3–106 in the context of an arrest made pursuant to a valid arrest warrant. As we indicated in

*People v. Wolf, supra,* violations by peace officers of statutory limitations upon their arrest authority will continue to be carefully scrutinized.

able under Article II, Section 7, of the Colorado Constitution, here produces the opposite result, as the majority holds. Therefore, I concur in Justice Kirshbaum's opinion for the majority.

QUINN, Justice, specially concurring:

I specially concur in the result. The Jefferson County Judge issuing the warrant did not specifically direct it to either of the arresting officers, Detective Lamb and Lieutenant Foulke of the Golden Police Department, for execution anywhere in the state. Instead, the issuing judge merely directed the warrant to "[a]ny person authorized by law to execute warrants within the State of Colorado." I, therefore, agree with the majority that the Golden police officers had no extraterritorial authority to arrest the defendant in Denver.

I view the facts of this case as significantly different from those present in *People v. Wolf*, 635 P.2d 213 (Colo.1981), where Denver police officers, knowing they were exceeding the territorial boundaries of their authority, proceeded to make an extensive investigation of the defendant's activities in Adams County and later in the day arrested the defendant in Adams County without a warrant and not in fresh pursuit. Here, in contrast, a warrant had been issued for the defendant's arrest, and until today's decision the authority of a peace officer to execute an arrest warrant outside of his territorial jurisdiction had not been definitively resolved. The conduct of the arresting officers, under the totality of circumstances in this case, was not so unreasonable as to violate the constitutional proscriptions against unreasonable seizures of the person, *U.S. Const.* Amend. IV; *Colo. Const.* Art. II, Sec. 7.

I write separately because I believe the majority's construction of the "fresh pursuit" statute unduly restricts what I perceive to be the clear authority of the court to issue an arrest warrant designating a specifically named officer to execute it anywhere in the state. I would not construe section 16–3–106, C.R.S.1973 (1978 Repl.Vol. 8), to prohibit a peace officer from making an extraterritorial arrest as long as an arrest warrant, issued pursuant to Crim.P. 4, specifically designates that officer by name to execute it anywhere in the state.

I.

Crim.P. 4(b) provides as follows:

"(1) Warrant. The arrest warrant shall be a written order issued by a judge of a court of record directed to any peace officer and shall:

(I) State the defendant's name or if that is unknown, any name or description by which he can be identified with reasonable certainty;

(II) Command that the defendant be arrested and brought without unnecessary delay before the nearest available judge of a county or district court;

(III) Identify the nature of the offense;

(IV) Have endorsed upon it the amount of bail if the offense is bailable; and

(V) Be signed by the issuing county judge."

Crim.P. 4(c) states that "[t]he warrant may be executed by any peace officer" and "may be executed anywhere within Colorado."

The plain meaning of Crim.P. 4 is to permit the judge issuing an arrest warrant to designate by name and to authorize the officer who requests the warrant to execute it anywhere in the state. The purpose of an arrest warrant, after all, is to bring the defendant before the court so that he may answer criminal charges already filed or about to be filed against him. In most cases the court issuing the warrant will be the same court in which the charges will be filed, and the officer at whose request the warrant is issued will know much more than officers from some other jurisdiction about what danger, if any, is posed by the defendant and the likely prospects of making an effective arrest at a particular location.

As the majority recognizes, the common law authorized a court to direct a particular person by name to execute a warrant any-

where within the jurisdiction of the court, and the person so named then had authority coextensive with that of the court with respect to the execution of the warrant. *See, e.g., Rex v. Weir,* 1 Barn & C. 288, 107 Eng.Rep. 108 (1823); *Rex v. Chandler,* 1 Ld.Raym. 545, 91 Eng.Rep. 1264 (1700); *In Chorley's Case,* 1 Salk. 176, 91 Eng.Rep. 161 (1699). *Cf. Restatement (Second) of Torts* § 129 (1965) (peace officer not privileged to arrest another under warrant unless the arrest is made within the territory within which the court issuing the warrant has authority to order the arrest). Crim.P. 4 makes explicit the long-recognized principle that courts retain the power to issue warrants and other writs in connection with matters over which they have jurisdiction.[1] I therefore would hold that Crim.P. 4 permits a judge to nominate the peace officer at whose request the arrest warrant is issued to execute it anywhere within the state of Colorado.[2] Were the intent of the rule otherwise, it would have so stated.[3] No such limitation is found in Crim.P. 4, and I would not read one into it.

## II.

Section 16–3–106 has its origin in the territorial law of 1868. Colo.Terr.Laws R.S. 1868, ch. XXII, § 236 at 251. In its original form the statute first provided that when an arrest warrant issued, "it shall be the duty of any sheriff, coroner or constable in whose hands any such warrant shall come, to execute the same within their respective counties," and then proceeded to address the fresh pursuit issue as follows:

> "When any such sheriff, coroner or constable ... shall be in pursuit of any offender, having a warrant for the appre-

1. Section 13–1–115, C.R.S.1973, states that courts shall have power "to issue all writs necessary and proper to the complete exercise of the power conferred on them by the constitution and laws of this state." District courts, by constitution, are courts of general jurisdiction. *Colo. Const.* Art. VI, Sec. 9. County courts, which by constitution are courts of limited jurisdiction, *Colo. Const.* Art. VI, Sec. 17, are nonetheless vested with such powers "as are inherent in constitutionally created courts." Section 13–6–102, C.R.S.1973. The legislature has granted county courts concurrent original jurisdiction with district courts with respect to the issuance of warrants. Section 13–6–106(1)(b). This constitutional and statutory scheme reinforces what I believe is the inherent power of courts to issue warrants and other writs in connection with matters over which they have jurisdiction.

2. Crim.P. 4(b) and (c), in their present form, became effective April 1, 1974. Crim.P. 59, C.R.S.1973 (Vol. 7B). In 1972, when the present version of section 16–3–106 was enacted, the then existing rule of criminal procedure stated that an arrest warrant may "be executed by any person authorized by law" and "may be executed ... anywhere within Colorado." Crim.P. 4(c)(1) and (2), C.R.S.1963 (Vol. 1). Even under the former Crim.P. 4, however, the intent was to authorize a peace officer named in the warrant to execute it anywhere in the state. The comment to the original rules of criminal procedure promulgated in 1961 states as follows with respect to the former version of Crim.P. 4(c):

> "Rule 4(c)(1) provides for the execution of a warrant 'by any person authorized by law.'

This would include 'any sheriff, coroner, constable or peace officer of the state of Colorado, or police officer of the county' or any person who is named in the warrant and authorized by the issuing justice of the peace." *Symposium on the Colorado Rules of Criminal Procedure,* 34 Colo.L.Rev. 1, 7 (1961).

3. Crim.P. 41(d)(5)(I), for example, expressly requires that, except in special circumstances, search warrants must be directed to an officer authorized by law to execute the warrant "in the county wherein the property is located." The special circumstances referred to in subsection (d)(5)(I) are set out in subsection (d)(5)(II):

> "(II) Any judge issuing a search warrant, for the search of a person or for the search of any motor vehicle, aircraft, or other object which is mobile or capable of being transported may make an order authorizing a peace officer to be named in such warrant to execute the same, and the person named in such order may execute such warrant anywhere in the state. All sheriffs, coroners, police officers, and officers of the Colorado State Patrol, when required, in their respective counties, shall aid and assist in the execution of such warrant. The order authorized by this subsection (5) may also authorize execution of the warrant by any officer authorized by law to execute it in the county wherein the property is located."

Both subsection (d)(5)(I) and (d)(5)(II) of Crim.P. 41 track the statutory language of section 16–3–305(1) and (3), C.R.S.1973 (1978 Repl.Vol. 8).

hension of such offender, and the offender shall cross the line into the adjoining county, such sheriff, coroner or constable . . . may pursue such offender into the adjoining county and make the arrest, as if such offender had been found in the county of the officer in pursuit."

This "fresh pursuit" statute, which has undergone several amendments since its original enactment, was enacted in its present form in 1972. Colo.Sess.Laws 1972, ch. 44, § 39–3–106 at 199. The present version of the statute drops the provision with respect to the duty of a peace officer to execute an arrest warrant within his territorial authority, but retains the provision authorizing the officer to pursue an offender in fresh pursuit beyond the boundary line of his authority in order to make an arrest.

I view section 16–3–106 as an express statutory authorization to a peace officer to make an extraterritorial arrest in fresh pursuit in two situations: (1) when the officer has probable cause to believe the offender committed a crime or the crime was committed in the officer's presence; and (2) when the officer has a warrant for the offender's arrest or knows that an arrest warrant has been issued, but the warrant itself does not specifically designate that particular officer to execute it beyond the territorial limits of his authority. In contrast to the majority, I do not believe the legislature intended section 16–3–106 as a limitation on the authority of a court to authorize a particular officer, designated by name in the warrant, to execute it anywhere in the state. Reading such a limitation into the statute, in my view, undercuts the plain meaning of Crim.P. 4, which was promulgated pursuant to this court's rule-making power under Article VI, Section 21

of the Colorado Constitution. Crim.P. 4 not only is consistent with the constitutional authority of this court, but also comports with the statutory authority of district and county courts to issue writs and warrants "necessary and proper to the complete exercise of the power conferred upon them by the constitution and laws of this state." Section 13–1–115, C.R.S.1973.[4]

I agree with the majority, however, that the arrest warrant in question did not authorize the Golden officers to effectuate the defendant's arrest in Denver; and although the arrest was beyond the authority of the officers, I also agree that the evidence should not have been suppressed under the peculiar facts of this case.

I am authorized to say that ROVIRA, J., joins me in this specially concurring opinion.

---

**4.** This court in *People v. Lott,* 197 Colo. 78, 589 P.2d 945 (1979), strongly implied that an officer who obtains an arrest warrant pursuant to Crim.P. 4 does have authority to make an extraterritorial arrest when the arrest warrant so provides. In *Lott* Wheat Ridge police officers learned of a burglary in Wheat Ridge and, without having obtained an arrest warrant or having enlisted the assistance of the Denver police, crossed over into Denver several hours after the burglary and arrested the defendants at a halfway house where they resided. In upholding the trial court's suppression of the evidence seized incident to the arrest, this court stated: "The district court ruled, and we agree, that there was time to have obtained an arrest warrant or to have enlisted the assistance of Denver police before arresting the [defendants] at 6:00 p.m." 197 Colo. at 81, 589 P.2d at 945. *Lott* thus implicitly recognizes that courts do have the authority to authorize a particular peace officer to execute a warrant anywhere in the state of Colorado and that this authority has not been abrogated by section 16–3–106.